SCHOOL DISTRICT No. THIRTEEN *v.* DEAN ET AL.

# School District No. Thirteen of The Township of Oshtemo v. Isaac S. Dean et al.

*Equity Jurisdiction: School Districts: Account.* On February 7, 1867, the legislature, by an act which took immediate effect, established a new school district, out of parts of three old ones, in the same township, and provided that a tax, levied in the latter districts for 1866, should be collected in the same manner as though they had remained unaltered; and that the old districts, together with the new one, should respectively be entitled to certain relative portions of the whole tax. The new district having been organized on the 1st of March, 1867, pursuant to law, the township board of school inspectors, on April 2d, 1867, assumed to set back to the old districts the territory carved out of them by the special act, and to dissolve the new district; and, one of the old districts holding and refusing to account to the new district, for a part of the tax of 1866, in which the latter was entitled to participate, according to said act, the new district filed a bill against the inspectors and such old district, for an account, and to enjoin the proceedings had, and threatened, for the extinction of the new district.

*Held,* That under the circumstances shown, the court had jurisdiction on the case made for an accounting, if not on other grounds.

*Held further,* That the inspectors had no power under *Comp. L. vol. 1,* §*2314,* to suspend or prevent the operation of the special act in respect to the distribution of the tax for 1866, nor to extinguish the new district established by the direct action of the legislature.

*Costs.* It appearing that one of the defendants was a school district, and the others school inspectors, and that the proceedings in question were had at the instance and with the approval of the superintendent of public instruction:

*Held,* That neither party should recover costs as against the other.

*Heard July 10th. Decided July 13th.*

Appeal in Chancery from Kalamazoo Circuit.

The bill in this cause was filed to enjoin the Board of School Inspectors of the Township of Oshtemo, Kalamazoo County, from proceeding to dissolve, reorganize or alter School District No. 13 in said county; and also to account for certain taxes collected.

The cause was heard upon stipulation, and a perpetual injunction was granted.

*Stuart, Edwards & May,* for complainant.

The legislature has the power to organize school districts, either by special or general law.

School District No. 13 was created by a special act, and the board of school inspectors have no power to destroy or alter it until its repeal.— *5 Pick. 334; 23 Vt. 630; 22 Ill. 66; 9 Mich. 543.*

The history of school legislation in Michigan is familiar to the court. Under the constitution the legislature passed a general law and provided for the organization of districts by school inspectors, and conferred upon them large powers. *R. S. 1838, 245; R. S. 1846, 227; 2 Doug. 121.*

The legislature have frequently, by special acts, in the charters of cities and villages, provided for other and different modes for organizing school districts.— *Vide charters City of Detroit, 1842, 112; Id. 1846, 101; City of Port Huron, 1859, 646; City of Niles, 1859, 355; Village of Kalamazoo, 1861, 401.*

In *charters of Bay City, 1867, vol. 2, 598; City of Flint, 1867, vol. 2, 258, and City of Adrian, 1861, 232,* the legislature has incorporated certain territory into school districts.

In all these instances the language of incorporation is substantially like that used in section one, organizing complainant.— *Vol. 2, Laws 1867, 22; 9 Mich. 541.*

Again: there is nothing in the special acts above referred to, except by implication, to prevent the school inspectors, in the several localities from exercising the same control over the territory, as is claimed by the inspectors in this case.

Similar statutes have received a construction by this court.

By general law the highway commissioners have control over the highways in their respective townships, yet they have no power to disturb a highway established by an act of the legislature.— *15 Mich. 347.*

*Vide Vol. 2, Laws 1867, 99,* where the commissioners of highways are first directly prohibited from acting in such cases.

*J. W. Breese* and *H. F. Severens,* for defendant.

1. The bill sets out a case of an anticipated violation of public trust, and is filed to obtain an injunction restraining such anticipated violation. It is true that it also sues for a decree against School District No. 3, for its proportion of district moneys, and is objectionable for that reason. Still the main ground is that first indicated. But the people only can prosecute for a violation of public trust. The court has no jurisdiction of the case upon a bill of this kind. The suit is not properly framed for that purpose. The question is purely a political one. The complainant is a municipal corporation created for public purposes only; and whether the defendants interfere or usurp the franchises of the complainant, is matter proper, and only proper, for the determination of the courts upon proceedings instituted by the Attorney General.— *13 Mich. 540; 18 N. Y. 155; 11 Paige, 118.*

2. But if the court should think it had jurisdiction, then we say that the Board of School Inspectors had power to remodel the school districts in the Township of Oshtemo, and that they had the same power over this new district that they have over other districts in the township. The power given them is general.— *Comp. L.* § *2314.*

*a.* The mode in which the district was organized can make no difference, whether by the legislature or the board.

There is nothing in the act to take this district out of the control of the school inspectors. If such had been the intention of the legislature, it was easy to have said so. On the contrary, they have left this school district after organizing it under the general law. There is nothing to show that it was to have special privileges and immunities, nor does it seem probable that the legislature intended to reserve to itself so special and limited a prerogative as the future control of this district.— *23 Vt. 630.*

*b.* The question being one of power is the same whether it is exercised within a month or in ten years. The fact

that the power was exercised soon after the organization of the district, furnishes no fair ground of argument. The same state of things would have occurred if, on coming into office, the board had changed a district organized by the last act of their predecessors. The court does not interfere with the discretion of any public body.—*2 Doug. 121.*

The argument drawn from the facts of this particular case upon the general question of power is specious, but wholly delusive.

*c.* It would lead to great inconvenience if the board should have no power to affect this district at any time when the necessities of the people require it. The constitution of a large number of other districts might be constantly encumbered and embarrassed by it. And yet the construction sought by the complainant would forever place the district beyond the possibility of change by the Board.

*d.* The true construction is that the legislature intended the district to stand on the same footing with other districts, subject to the like incidents, deriving its support in the same way, and in all things controlled and maintained as other districts.

It could not be carried on at all, except from the support it draws from the general system under general laws. To say that reference must be had to the general law for all purposes, but one, is purely arbitrary.

*e.* The moment the school district was organized, the act became *functus officio.* It repeals nothing, but leaves § *2314, Comp. L.* untouched.

*f.* Repeals by implication are not favored. The principle by which a special act supersedes a general one *quoad hoc* does not go the length of supporting the pretence that this act conferred special immunities and privileges upon this district. For the act relates simply to the organization, and as to this, supersedes the general law, but it is a perversion of the principle to say that in addition to the organization of the district it gave its creature a title to immortality.

Such an effect is to be given to the special act as shall make it harmonize, so far as possible, with the general law on the subject.— *Sedg. on Stat. and Const. Law, 126, 127; 16 Peters, 342; 15 East, 371; 2 Barn. and Cress. 322; 9 Mees. and Wells. 777–789; 9 Barb. 260.*

*g.* The provisions in the special act for dividing the moneys were to enable the new district to get its proportion, because the general law did not cover such a case, and to meet the difficulty which existed in the Saginaw case.— *9 Mich. 541.*

3. As nothing appeared to indicate that the defendants had acted in bad faith, costs should not have been awarded against them.— *5 Id. 223.*

GRAVES J.

On the seventh day of February, 1867, the legislature, by an act made to take immediate effect, established a school district numbered 13, in the Township of Oshtemo, in the County of Kalamazoo, and to constitute the same detached portions of the territory embraced in districts 3, 9 and 10 of the same township. The second section of the act required that the same course should be taken for th organization of the new district as already prescribed by law in the case of districts formed by township inspectors.

The third section provided that the tax for district purposes in the districts 3, 9 and 10, other than for the payment of debts of the districts, which had been levied for 1866, should be collected in the same manner as if no part of said districts had been set off, and that said three districts and the district established by the act should each be entitled to such proportion of said tax as the amount of taxable property in each part bore to the whole amount of taxable property on which the tax was levied.

On the first day of March, 1867, the new district was duly organized, pursuant to the act, and district officers regularly chosen; and on the 2d day of April thereafter, the

Board of School Inspectors of the township convened for the purpose of re - establishing the districts as they were before the creation of the new district by the legislature. In pursuance of such design the Board of Inspectors resolved in due form· that the territory embraced by the new district should be and was thereby set back to the districts numbered 3, 9 and 10, and thus assuming at that time to dissolve the district which the legislature had established on the preceding seventh of February.

Thereupon the new district, No. 13, filed a bill in the Circuit Court in Chancery, for the county of Kalamazoo, setting forth the foregoing and other facts, and stating that said district No. 3, and said inspectors threatened to enforce by law the said determination of the latter, and that said district No. 3 held and retained from complainants the portion of the tax of 1866 belonging to them, amounting to $324.61.

The bill prayed an account, and that the defendants might be enjoined from further interference with the corporate rights of the complainants and for general relief.

The school inspectors and district No. 3 only appeared and answered, and the complainants filed a general replication. The material facts were admitted by stipulation, and it was agreed that the only question of law to be submitted was whether, upon the facts, the Board of School Inspectors had any power to re - district the township in such manner as to destroy the new district. The court below decided that the new district was legally constituted; that the action of the Board of Inspectors, complained of, was unauthorized and void, and perpetually enjoined the inspectors and their successors from making any change in the boundaries of the district, as established by the legislature.

The School Inspectors and the district No. 3 have appealed to this court.

Two points are made: *First*, that the case is not one of equitable jurisdiction, and that the remedy of the

complainants, if any, could only have been found in a proceeding by the Attorney General; and *second*, that the school inspectors had the same power over the new district as over one formed by themselves.

The first point must be determined upon the theory of complainants' bill, and not upon the nature of the relief given by the court. According to the theory of the bill, the District No. 3, in part, by means of the active and illegal efforts of the inspectors wrongfully and inequitably holds certain taxes belonging to complainants, and refuses to account therefor, and which taxes were among those mentioned in the act of the legislature, and collected in the original districts. We think that, under the peculiar circumstances of this case, the jurisdiction may be maintained, on the ground that an accounting may be called for, if not on other grounds.

In respect to the second point it is very clear that the power claimed for the inspectors did not exist to the extent insisted on. The act of the legislature not only established the new district, by combining portions of three old ones, but made positive provision for a portion of the taxes collectable for 1866 in the territory comprehended by the four districts, which was wholly incompatible with the asserted authority of the inspectors.

The exercise of power by them as they assumed to exercise it, and as they now insist upon as a matter of right, could not possibly co-exist with the positive regulation as to the taxes made by the legislature. Either the legislative regulation was a law superior to the authority of the inspectors or the power of the inspectors was superior to the authority of the act.

The act itself did not purport to vest any authority in the inspectors to dispense with the law, and as the statute was the superior authority it was beyond the power of the inspectors to destroy or invalidate its operation.

Since the regulation as to the taxes was necessarily in operation when the inspectors resolved to vacate the new district, and since such action necessarily involved the overthrow of that regulation, the proceedings of the inspectors were wholly invalid. If the complete disposition of the case depended, therefore, upon the invalidity of the action of the inspectors, it would be unnecessary to go further. But, on looking into the record, it appears that the court below perpetually enjoined the inspectors and their successors from changing the boundaries of the new district. It seems necessary, therefore, to inquire whether the inspectors, under existing laws, would, if not enjoined, have the power at some future time to change the boundaries of that district.

It was argued with much force, on the part of the defendants, that the reasoning of the complainants would place this district forever beyond the possibility of change by the inspectors, and that it was reasonable to suppose that the legislature intended to leave the district, when established, under the control of the inspectors to the same extent as districts formed by them.

It must be admitted that there is no middle ground. Either the district must be independent of change by the inspectors, or it must be as much under their sway as other districts. As a corporation, brought into existence by the direct act of the legislature, it could not be dependent upon any general act, or upon the inspectors for its continuance; nor could it exist if its organic act should be repealed. It would, therefore, stand by itself as an independent corporate existence, and deriving no vital support from the law under which inspectors form districts; and it is difficult to see how it could be essentially altered without an alteration of the act which stands, in some respects, in the place of a charter.

We have already seen that the inspectors could take no action which would change or extinguish the operation of

that part of the act which regulated the taxes, and it seems manifest that in so far as that provision would be practically operative, the legislative intent would be plain against any intermeddling by the local authorities.

There would necessarily be a period then when the corporation created by the act in question would be exempt from local interference. The legislature have not declared by this act, nor can it be implied from any other, when this period of exemption should terminate. It is a fair inference, then, that it was meant to be perpetual. The district in question was created by direct legislation, and a continuing independent power to dissolve it vested in another body, would be anomalous. It would suppose two powers in operation at the same time, one of which would have the right to create, and the other, at the same instant, the right to destroy, while one of these conflicting authorities could only exist by the sufferance of the other.

It seems to me, therefore, upon general reasoning, that it could not have been the purpose of the legislature to allow the inspectors to make any change in the boundaries of the district established by the statute.

There remains a single question relating to costs.

The court below decreed costs against the defendants to be collected by execution. One of the defendants is a school district, and the others are school inspectors, and I am persuaded that they ought not to be charged with costs.

Although the course pursued by them is open to the suspicion that personal feeling had a lively influence where none should have existed, yet we are informed by the answer that the proceedings to dissolve the new district were upon the suggestion and with the approval of the state superintendent of public instruction for the State of Michigan for the time being. This circumstance is entitled to weight upon the question of costs against this school district and their school officers.

I think that the decree below ought to be affirmed except as to the costs, and as to them, that it should be reversed, and that neither party should recover costs as against the other.

The other Justices concurred.