The Attorney General v. Charles S. Marr et al.

*Township organization.*

1. Such townships as are to be organized into counties in Michigan must correspond in territorial extent to the original government survey unless the Legislature otherwise provides; and if it does, the question of their extent is left to the electors residing in the counties affected.

2. The powers of a board of supervisors are such only as the Legislature confers, except that it has the constitutional power to organize townships; but it must do this under legislative restrictions.

3. Legislative power is limited only by the Federal and State constitutions; and though the Legislature can confer local legislative powers upon a board of supervisors, it can also suspend their exercise or revoke them entirely, even in the matter of laying off new townships from the territory of old ones. And this may result from a necessary inconsistency between the action of the Legislature and that of the board.

4. Act 394 of 1879 discontinuing the township of Sherman, which was composed of four cornering sections taken from four cornering townships in Wexford county, was enough to invalidate the contemporaneous action of the board of supervisors in establishing the township of Concord, to consist in part of the former township of Sherman.

5. The State cannot be estopped by long acquiescence in the action of a board of supervisors establishing a township, no matter how regular such action, if in the original instance the board did not have the power to establish the particular township.

Quo warranto proceedings. Submitted October 21, 1884. Decided January 7, 1885.

Attorney General *Jacob J. Van Riper* and *Smiley & Earle* for relator, cited *School District v. Dean* 17 Mich. 223 ; quo warranto lies against persons assuming to act as township officers ; *Scrafford v. Gladwin Supervisors* 41 Mich. 647; *State v. Bradford* 32 Vt. 50 ; *People v. Maynard* 15 Mich. 463 ; *Owosso School District v. School Inspectors* 27 Mich. 3.

*Pratt, Hatch & Davis* for respondents. The determination of the board of supervisors as to the sufficiency of the application for the organization of a township and of the notice of proceedings therefor is final : *Attorney General v. Page* 38 Mich. 287; *Attorney General v. Lake Supervisors* 33 Mich. 290 ; as to estoppel of municipalities, see Cooley's Const. Lim. 311; *Bird v. Perkins* 33 Mich. 28.

SHERWOOD, J. The townships of Wexford, Hanover, Springville and Antioch, in the county of Wexford, were laid off and organized as originally surveyed, containing thirty-six sections each. These townships all corner with each other. The information in this case shows that some time previous to the 28th day of May, 1879, the board of super-

visors of said county assumed to create a new township, consisting of a section taken from each of the townships above named, all cornering with each other. The new township was called Sherman. The Legislature passed an act which was approved on the 28th day of May, 1879, discontinuing the township of Sherman, and attaching the sections composing the same to the several townships from which they were taken. On the 21st of August, 1879, seven days before the act above mentioned took effect, the board of supervisors assumed to organize another township in said county, and took action by which they constituted the east two sections of the town of Sherman, as created by them, and the next two sections lying east of those, a township under the name of the township of Concord, and by resolution an election was ordered to be held on the 8th of September following, at which township officers were chosen; and their successors, who are the respondents in this case, claim to exercise the functions of the several offices in said township.

The information further avers that the board of supervisors of said county, since the pretended organization of the said township of Concord, have never recognized its organization, or permitted the person elected as its supervisor to take a seat in their board or participate in its proceedings; that the organization of said township is illegal and void; that the meeting of the board of supervisors at which the pretended organization of said township took place was not properly or lawfully called; that no lawful petition or application was ever made to said board asking for the organization of said township, and that no legal notice of the pendency of any such petition before the board was ever given, posted or published; and that the organization of said township was for a fraudulent purpose, in violation of the act of the Legislature above referred to, and without any lawful authority whatever.

The respondents filed their plea, and deny the usurpation charged in the information; claim the organization of the township of Concord to be regular and legal; that the refusal of the board of supervisors to admit the supervisor of Con-

cord to a seat in their body, and participation in their proceedings, was illegal; that the board of county canvassers recognized the legal existence of said township by canvassing the votes given in the same for State officers in 1880 and 1882, and that by such acts, and long acquiescence, the public are estopped from questioning the legality of the organization of the township; that the township has about three hundred residents, and that they are satisfied with the organization; that the same was necessary to protect and subserve the interests of the inhabitants of the township, which will be best promoted by retaining the organization; and that the object was not to defeat the action of the Legislature.

Accompanying the plea is a copy of the proceedings of the board of supervisors taken in organizing the township. To the plea filed a general demurrer was interposed, and upon the issue thus made the proceeding is before us for final disposition. The allegations in the information and the statement of facts in the plea do not materially differ, except in the conclusions of the parties resulting from the facts stated. The proceedings in this case, while purporting to be only to ascertain by what authority the respondents hold the several offices whose franchises they assume to exercise, is really to ascertain and determine the legal existence of the said township of Concord. The proceedings therefore involve questions of public importance, requiring careful consideration lest the interests of the public as well as those of the respondents be jeoparded.

Two points are chiefly relied upon by the Attorney General upon the issue made in the case, to sustain the information: *first*, that the action of the board of supervisors in organizing the township of Concord was in conflict with an Act of the Legislature, being No. 394 of the Local Acts of 1879; *second*, that the application for and other proceedings had to organize said township on the part of said board were so irregular as to be illegal and void.

The political divisions of the State are counties, townships, cities and villages. Section 2 of article 10 of the Constitution provides that "No organized county shall ever be reduced

by the organization of new counties to less than sixteen townships, as surveyed by the United States, unless in pursuance of law a majority of electors residing in 'each county to be affected thereby shall so decide. The Legislature may organize any city into a separate county when it has attained a population of twenty thousand inhabitants, without reference to geographical extent, when a majority of the electors of a county in which such city may be situated, voting thereon, shall be in favor of a separate organization." Section 6 of the same article is as follows: " A board of supervisors, consisting of one from each organized township, shall be established in each county, with such powers as shall be prescribed by law." Section 11 of said article also provides that " The board of supervisors of each organized county may provide for laying out highways, constructing bridges and organizing townships, under such restrictions and limitations as shall be prescribed by law." From these sections, we think, it clearly appears (1st) that the territorial extent of townships to be organized into counties should correspond with the original government survey thereof, unless the Legislature otherwise provides; and in case such provision is made, the electors residing in each county to be affected thereby are to determine the question; (2nd) that the board of supervisors have such powers only as the Legislature may confer upon it, except that it may organize a township under such restrictions and regulations as the Legislature shall prescribe.

The Legislature in 1867 prescribed certain restrictions and regulations applicable in such cases, and they are contained in How. Stat. §§ 486, 487. Perhaps, however, there may be some question whether the Legislature can confer upon the board of supervisors the power to change the territorial limits of a township. Under these restrictions and regulations undoubtedly the power is conferred by the Constitution upon the board of supervisors to make the organization of a township, provided the provisions of the statute are strictly complied with in so doing and the Legislature has passed no subsequent statute contravening the law under which the board is required to proceed. This brings us directly to the con-

sideration of the first point relied upon by the Attorney General : Was the action of the board in this case (presuming such action was regular) in conflict with the Act of the Legislature, No. 394, heretofore referred to ? There can be no question but that the Legislature possesses the power to make such political divisions of the territory embraced within the State as it may choose, and in organizing a township it may or may not authorize the board of supervisors to act as it may deem best ; but in conferring such authority upon the board, it does not thereby deprive itself of its original sovereign power or the right to exercise it in organizing townships whenever the best interests of the people may require such action. The absolute, uncontrolled sovereign power of legislation, except as limited by the Constitution of the United States and of this State, rests in the Legislature.

By the Constitution the Legislature may confer upon the board of supervisors powers of local legislative character, (art. iv, sec. 38), and when such power has been conferred, or the board has been authorized to exercise such powers under art. x, sec. 11, of the Constitution, such power and such authority may be suspended or entirely revoked in any particular instance, at any time the Legislature may see fit ; and this may be done by any such action of the Legislature as must be deemed wholly inconsistent with the action of the board, as well as by direct legislation. Such seems to be just what was done in this case. The local act of the Legislature could not be carried into effect if the action of the board of supervisors was valid. The one must necessarily suspersede the other, and when there is such a conflict the act of the sovereign power is superior and must prevail. *School-dist. No.* 13 *v. Dean* 17 Mich. 223. This disposes of the first point.

It is hardly necessary to discuss the question further. Still we think it not difficult to sustain the second point from the record, were it important. It is claimed by the respondents that the long acquiescence in the action of the board estops the State from taking this proceeding. This cannot be, so long as the board possessed no power to organize a township in the territory mentioned at the time it attempted so to do.

Regular proceedings in such a case would not give the township a legal existence; therefore the action of the board furnished no foundation for the estoppel claimed. We think that the supposed township of Concord has no legal existence, and that the defendants are guilty of the usurpation charged in the information.

Judgment of ouster will therefore be entered against said defendants, and the Attorney General will be allowed to recover costs.

CAMPBELL and CHAMPLIN, JJ. concurred.

COOLEY, C. J. concurred in the result.