CARVER et al. v. SAN PEDRO, L. A. & S. L. R. CO.

(Circuit Court, S. D. California, S. D. June 25, 1906.)

No. 1,219.

1. NAVIGABLE WATERS—OBSTRUCTION—INJUNCTION.

An obstruction to navigable waters may be enjoined at suit of a private person who suffers a special injury therefrom, whether such injury be different in kind from that of the public at large or only greater in degree.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Navigable Waters, §§ 139½, 140.]

2. SAME—GRANT OF LANDS—EFFECT ON INCLUDED WATERWAY.

A patent for land does not by implication convey title to the soil under a navigable stream, although such stream is embraced within the limits of the grant, so as to affect the status of the stream as a navigable waterway.

3. SAME.

Even a grant of the bed of a navigable stream to a private owner leaves the stream subject to the public right of navigation and the control of Congress.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Navigable Waters, §§ 219, 220.]

4. SAME.

No act of or grant by an executive department of the United States can affect the right of the public to use the waters of a navigable stream for purposes of navigation, nor the power of Congress to control the same.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Navigable Waters, § 43.]

5. INJUNCTION—RIGHT TO PRELIMINARY INJUNCTION.

The character of an injunction, as to whether it is mandatory or preventive, is determined by the situation at the time of the filing of the bill therefor, and the right of a riparian owner on a navigable waterway to a preliminary injunction to restrain the obstruction of such waterway by a bridge, which was not standing when the bill was filed, is not affected by the fact that it had been temporarily removed and was thereafter replaced, so that the injunction would be mandatory in effect.

In Equity. On demurrer to bill and order to show cause.

L. H. Valentine, Joseph H. Call, Long & Baker, and Seward A. Simons, for complainants.

J. A. Gibson, A. S. Halsted, and T. E. Gibbon, for defendant.

WELLBORN, District Judge. The uncontradicted evidence, written and oral, adduced on this hearing, shows the following facts: That Cerritos slough is navigable; that defendant's bridge was built without authority of Congress or the Legislature of California, and obstructs the navigation of said slough; that complainants, respectively, own lands situated on said slough, and are engaged in business enterprises dependent upon its navigation, and are suffering from the obstruction of such navigation serious damages, which from their nature are incapable of estimation, and are therefore irreparable. Heilbron v. Canal Co., 75 Cal. 426, 17 Pac. 535, 7 Am. St. Rep. 183. From these facts it necessarily results that said bridge is a public nuisance, and the first inquiry, purely one of law, is as to the sort of injury which will

justify resort by a private person to a court of equity for abatement of such a nuisance.

It is firmly established by a long line of federal decisions that an obstruction to navigable water may be enjoined by a private person who is injured thereby differently from the general public, either in degree or kind. Georgetown v. Alexander Co., 12 Pet. 98, 9 L. Ed. 1012; Pennsylvania v. Wheeling, etc., Bridge Co., 13 How. 561, 14 L. Ed. 249; Union Pacific Railroad Co. v. Hall, 91 U. S. 343, 355, 23 L. Ed. 428; Baird v. Shore Line Ry. Co., 2 Fed. Cas. 427 (No. 758); Works v. Junction R. R., 30 Fed. Cas. 626 (No. 18,046); Hatch v. Wallamet Iron Bridge Co. (C. C.) 6 Fed. 326; Id. (C. C.) 6 Fed. 780. This last case was reversed by the Supreme Court, but the reversal was on jurisdictional grounds, not affecting the point now under consideration. Willamette Iron Bridge Co. v. Hatch, 125 U. S. 2, 8 Sup. Ct. 811, 31 L. Ed. 629.

Whitehead v. Jessup (C. C.) 53 Fed. 707, relied on by defendant, it must be conceded, is not in line with the cases above cited, but supports defendant's contention that, in order to maintain the suit, it must appear that the defendant's bridge causes some injury to the complainants different in kind from that sustained by the general public who navigate the waters in question. In the case last named, paragraph 2 of the syllabus is as follows:

"One who seeks by suit in his own name to compel the removal of an obstruction to navigable waters must show some injury to himself, caused thereby, different from the injury sustained by the general public who navigate such waters. Hence, where complainant, a riparian owner, had free access to the navigable channel in front of his land, held, that he could not, in his own name, maintain a suit to compel the removal of a bridge over such channel, half a mile from his land, though his boats, in navigating to and from adjacent waters, were obstructed by such bridge."

Under this view of the law, a person who owns land of inconsiderable value immediately in front of the bridge and abutting upon the slough, if at all injured, no matter how slightly, might have equitable relief against the public nuisance; whereas, another riparian owner, but a few rods above the bridge, with large wharves for the accommodation of the shipping interests of the general public, and with large manufacturing establishments dependent for their operation entirely upon the navigation of the waterway, and costing hundreds of thousands of dollars, would be wholly remediless. If the question were an open one in this court, I could not subscribe to such a doctrine. The distinction which allows a remedy in one case, but denies it in the other, is unsubstantial, and the right to the free use of navigable waters for trade and commerce is of such transcendent worth to individuals, as well as the state, that the remedies for its enforcement ought not to be abridged by technicalities or overnice refinements. The just rule, it seems to me, is that relief should be granted in all cases where there is special injury to the complainant, whether the injury complained of be different in kind from that of the public at large or only greater in degree, and this unquestionably is the doctrine of Pennsylvania v. Wheeling Bridge Co., supra, as the Supreme Court itself subsequently declared in the following unmistakable terms:

"An application, for a mandamus, not here a prerogative writ, has been supposed to have some analogy to a bill in equity for the restraint of a public nuisance. Yet, even in the supposed analogous case, a bill may be sustained to enjoin the obstruction of a public highway, when the injury complained of is common to the public at large, and only greater in degree to the complainants. It was in the Wheeling Bridge Case, 13 How. 518, 14 L. Ed. 249, where the wrong complained of was a public wrong, an obstruction to all navigation of the Ohio river." Union Pacific R. R. Co. v. Hall, supra.

The state courts are not agreed upon this question; but it is unnecessary to review their conflicting decisions, since the enunciations of the Supreme Court of the United States are absolutely authoritative. The following cases, however, are in line with the federal cases above cited: Hickok v. Hine, 23 Ohio St. 523, 13 Am. Rep. 255; Dudley v. Kennedy, 63 Me. 465; Farmers Co-op. Mfg. Co. v. Albemarle, etc., R. R. Co. (N. C.) 23 S. E. 43, 29 L. R. A. 700, 53 Am. St. Rep. 606.

Defendant's contention that, because Cerritos slough is included within the boundaries of the Dominguez patent, both the United States and private persons are estopped from asserting the navigability of said slough, is without merit. I am of opinion that said patent did not operate to pass title to the bed of said slough. The Supreme Court of California has said (italics mine):

"In case of Royal Fishery in the River Banne (Ireland), Davies, 149, it was resolved 'that there are two kinds of rivers, navigable and not navigable; that every navigable river, so high as the sea ebbs and flows in it, is a royal river, and belongs to the king, by virtue of his prerogative; but in every other river, and in the fishery of such other river, the terre-tenants on each side have an interest of common right, the reason for which is that, so high as the sea ebbs and flows, it participates of the nature of the sea, and is said to be a branch of the sea so far as it flows.' *One of the results of this royal prerogative was that a grant of land* extending to and bounded by or *including a navigable stream within its boundaries did not operate to pass title to the bed of the stream,* while a grant from the sovereign of land bordering upon a stream not navigable in the common-law sense—that is, above tide water—would be presumed to extend to the thread of the stream. We must not be understood as indicating that at common law the bed of a navigable stream could not be granted to a subject by a sovereign, but only as saying that it did not pass, except in those cases where the specific intent to so grant was apparent in the conveyance." Wright v. Seymour, 69 Cal. 124, 125, 10 Pac. 324, 325.

I am not unmindful that it can with some show of plausibility be claimed that from the exception in the Dominguez patent of that portion of the surveyed tract covered by the navigable waters of the inner Bay of San Pedro may be inferred an intention to grant all other lands in the tract covered by navigable waters. It is sufficient, however, in answer to this claim, to say that a patent cannot, by inference or implication, pass title in the bed or shore of a navigable stream; but this can be done only by express words manifesting a specific intent to grant such title. In Shively v. Bowlby, 152 U. S. 1, at pages 13 and 14, 14 Sup. Ct. 548, 552, 553, 38 L. Ed. 331, the court says:

"In England, from the time of Lord Hale, it has been treated as settled that the title in the soil of the sea, or of arms of the sea, below ordinary high-water mark, is in the king, except so far as an individual or corporation has acquired rights in it by express grant, or by prescription or usage. * * * The common law of England upon this subject, at the time of the emigration of our ancestors, is the law of this country, except so far as it has been modified by

the charters, constitutions, statutes, or usages of the several colonies and states, or by the Constitution and laws of the United States."

If it be conceded, however, that the legal title to the shore or tide land, or even the entire bed of said slough, passed by the Dominguez patent, still it was subject to the public right of navigation and the power of Congress under the commerce clause of the Constitution to regulate the same. Shively v. Bowlby, 152 U. S. 1, 13, 14 Sup. Ct. 548, 38 L. Ed. 331; South Carolina v. Georgia, 93 U. S. 4, 23 L. Ed. 782; Eldridge v. Trezevant, 160 U. S. 452, 16 Sup. Ct. 345, 40 L. Ed. 490; Gibson v. U. S., 166 U. S. 269, 17 Sup. Ct. 578, 41 L. Ed. 996; Scranton v. Wheeler, 179 U. S. 141, 21 Sup. Ct. 48, 45 L. Ed. 126; Ward v. Mulford, 32 Cal. 365, 373; West Chicago Street R. R. Co. v. Illinois ex rel. Chicago (decided by U. S. Supreme Court April 9, 1906) reported in 26 Sup. Ct. 518, 50 L. Ed. 845.

In the case of Ward v. Mulford, above cited, the court says:

"If the Mexican government had made any rightful disposition of lands which she held as sovereign, neither the United States nor the state, as succeeding sovereigns, could disregard it, any more than in the case of other lands. But by this we do not desire to be understood as holding that the Mexican government, or this state, has the same power of absolute alienation over lands held in virtue of their sovereignty which they have over other lands. The land which the state holds by virtue of her sovereignty, as is well understood, is such as is covered and uncovered by the flow and ebb of the neap or ordinary tides. Such land is held by the state in trust and for the benefit of the people. The right of the state is subservient to the public rights of navigation and fishery, and theoretically at least the state can make no disposition of them prejudicial to the right of the public to use them for the purposes of navigation and fishery, and, whatever disposition she does make of them, her grantee takes them upon the same terms upon which she holds them, and, of course, subject to the public rights above mentioned. But this restriction does not prevent her from disposing of them so as to advance and promote the interests of navigation."

The power of Congress over navigable waters was broadly exercised in sections 9 and 12 of the act of March 3, 1899, entitled "An act making appropriations for the construction, repair and preservation of certain public works on rivers and harbors, and for other purposes" (30 Stat. 1151, c. 425 [U. S. Comp. St. 1901, pp. 3540, 3542]), which sections are as follows:

"Sec. 9. That it shall not be lawful to construct or commence the construction of any bridge, dam, dike, or causeway over or in any port, roadstead, harbor, canal, navigable river, or other navigable water of the United States until the consent of Congress to the building of such structure shall have been obtained and until the plans for the same shall have been submitted to and approved by the chief of engineers and by the Secretary of War: Provided, that such structures may be built under authority of the Legislature of a state across rivers and other waterways the navigable portions of which lie wholly within the limits of a single state, provided the location and plans thereof are submitted to and approved by the chief of engineers and by the Secretary of War before the construction is commenced: And provided further, that when plans for any bridge or other structure have been approved by the chief of engineers and by the Secretary of War, it shall not be lawful to deviate from such plans either before or after completion of the structure unless the modification of said plans has previously been submitted to and received the approval of the chief of engineers and of the Secretary of War.

   *     *     *     *     *     *     *     *     *     *

"Sec. 12. That every person and every corporation that shall violate any of

the provisions of sections nine, ten and eleven of this act, or any rule or regulation made by the Secretary of War in pursuance of the provisions of said section fourteen, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a fine of not exceeding twenty-five hundred dollars nor less than five hundred dollars, or by imprisonment (in the case of a natural person) not exceeding one year, or by both such punishments, in the discretion of the court. And further, the removal of any structures or parts of structures erected in violation of the provisions of said sections may be enforced by the injunction of any circuit court exercising jurisdiction in any district in which such structures may exist, and proper proceedings to this end may be instituted under the direction of the Attorney General of the United States."

In the case last cited (Scranton v. Wheeler, supra) the court said:

"The power to regulate commerce is the basis of the power to regulate navigation and navigable waters and streams, and these are so completely subject to the control of Congress, as subsidiary to commerce, that it has become usual to call the entire navigable waters of the country the navigable waters of the United States. It matters little whether the United States has or has not the theoretical ownership and dominion in the waters, or the land under them. It has, what is more, the regulation and control of them for the purposes of commerce. So wide and extensive is the operation of this power that no state can place any obstruction in or upon any navigable waters against the will of Congress, and Congress may summarily remove such obstruction at its pleasure."

There is no escape from the conclusion that whatever interest, if any, in the shore or bed of Cerritos slough, passed by the Dominguez patent, such interest is subservient to the right of the public to use and the power of the government to control the waters of said slough for purposes of navigation.

There is another view, which defeats defendant's contention on this point. The constitutional power of Congress over the navigable waters of the United States cannot, of course, be impaired or restricted by the action of any agent or officer of the government, and this unassailable proposition would be absolutely disregarded by a holding that the Dominguez patent estops the government from asserting the navigability of Cerritos slough, when in fact it is navigable. Undoubtedly, the General Land Office had jurisdiction to determine the validity and boundaries of Mexican grants and to cause patents to issue therefor; but it is equally sure that neither that nor any other branch of the executive department could convey or surrender to a private person the right of the public to use or the government's control over the navigable waters of the ceded territory, and any executive action claimed to have that effect would necessarily be thus far without authority of law. While it is questionable if the government can be estopped at all by a recital in its own grant or patent (Carver v. Astor, 4 Pet. (U. S.) 87, 7 L. Ed. 761), certainly no such estoppel can arise from the unauthorized act of an agent or officer (Attorney General v. Marr, 55 Mich. 445, 21 N. W. 883; State v. Brewer, 64 Ala. 287; Pulaski County v. State, 42 Ark. 118; Salem Imp. Co. v. McCourt, 26 Or. 93, 41 Pac. 1105).

The point urged by defendant, that the relief asked for is in the nature of a mandatory injunction, and on that account should be denied, at least pendente lite, is not well taken. A mandatory injunction compels the affirmative performance, while a preventive injunction restrains the commission of an act. 16 Am. & Eng. Ency. of Law,

342. Tested by this rule, the relief which Carver seeks is in no sense of the term mandatory, but purely preventive, since, when the suit was commenced, the bridge was not standing, and the bill was filed to prevent its erection. Nor is it any answer to say that the bridge was removed by the defendant provisionally, with a design of immediate replacement when the object of the removal was effected; for the distinction between the two kinds of injunction named, as applied to nuisances, such as the one here complained of, depends solely upon the question whether the obstruction sought to be enjoined actually existed at the time of filing the bill, or was only threatened. An injunction would be, in the former case mandatory, in the latter preventive. Nor is there any other rule of equity which would deny to Carver on this hearing the relief he seeks. On the contrary, since the damages to him on account of his riparian ownership and his business of building, repairing, hiring, and towing of boats and sea-going vessels are incapable of ascertainment, and therefore irreparable, and since all the other material facts and principles of law applicable thereto are proven and settled in such a way as to clearly establish his right to equitable relief, the postponement of such relief until final hearing would be without the sanction either of reason or precedent. California P. & A. Co. v. Enterprise C. & I. Co. (C. C.) 127 Fed. 741; Enfield Toll Bridge Co. v. Hartford & N. H. R. R. Co., 17 Conn. 40, 65, 42 Am. Dec. 716; Hackensack Imp. Com. v. N. J. Midland R. R. Co., 22 N. J. Eq. 94; Allington & C. Mfg. Co. v. Booth, 78 Fed. 878, 24 C. C. A. 378.

In this last case, which was decided by the Circuit Court of Appeals for the Second Circuit, the court said:

"Whenever it is manifest to the court that, upon the case made, an injunction will be granted at final hearing to the complainant, one should be awarded to him preliminarily, in the absence of facts presenting special equitable considerations to induce the court, in the exercise of judicial discretion, to withhold it. Under such circumstances, there is no reason why the complainant should not have his remedy immediately. Why should a court of equity permit a wrong, indisputable and wanton, to go unredressed longer than necessary? The object of a preliminary injunction is to preserve property rights pending the final determination of the suit."

This last case, it is true, was a suit to restrain the infringement of a patent; but the principle of the quotation is applicable in all suits where preliminary injunctions are sought. The element of wantonness asserted in said quotation I do not apply to the case at bar, nor is it necessary to the relief sought. The rule is elsewhere succinctly stated as follows:

"But where the facts upon which the right depends are established or admitted, and the principles of law which on these facts would give the right are settled and established, a court of equity may apply the principles as settled by the court of law to the facts and allow an injunction." 16 Am. & Eng. Ency. of Law, 360.

The considerations and authorities last stated and cited not only justify, but require, a temporary injunction also in favor of the Dock & Terminal Company, whose injuries are greater than those of Carver, and likewise irreparable, although, at the time said company was made a party to the bill, the bridge was standing, and the injunction, so far

as it concerns said company, may be, in effect, though not in form, mandatory. In this view of the case, it is unnecessary to determine whether said company was or was not instrumental in procuring the removal of the bridge. If the right of said company to relief depended upon the nonexistence of the bridge, and said company, through any artifice, had brought about a removal of the bridge, with the ulterior purpose of applying, and had applied, for an injunction before the bridge could be restored, such participation by said company in the removal of the bridge would be a circumstance on which a court of equity would look with disfavor. Since the company, however, did not become a party to the suit until after the restoration of the bridge, and, as I have already said, is entitled to relief, even in the form of a mandatory injunction, said company's connection, if any, with the removal of the bridge, is immaterial. It is worthy of consideration, however, that the bridge is of such temporary construction that it can be, and was, removed and restored within a short time, at an inconsiderable cost, not exceeding $1000.

An injunction will issue restraining the defendant from maintaining, during the pendency of the suit or until otherwise ordered by the court, the bridge in controversy, upon the execution of a bond in the sum of $2,500, with sufficient sureties, to be approved by the clerk of this court, to pay defendant all damages it may suffer from said injunction, in the event it should hereafter appear that complainants are not entitled to such relief.

Exceptions to a bill for impertinence should be in writing and signed by counsel. Equity rules 26 and 27. Noncompliance by defendants with said rules is doubtless fatal to its purported exceptions, made orally and entered on the minutes of the court. However, I am satisfied that said exceptions, if they were in writing and signed by counsel, would not be well taken, and they are accordingly disallowed.

The demurrer to the bill will be overruled, and the defendant assigned to answer the same on or before the rule day in August next.