Argued June 4, decided June 18, rehearing denied July 30, 1912.

## STATE ex rel. *v.* PORT OF TILLAMOOK.

[124 Pac. 637.]

QUO WARRANTO—STATUTES—EFFECT.

1. While Section 363, L. O. L., abolishes the writ of *quo warranto,* the jurisdiction and power of the courts was not changed, only the form being abrogated, and the same relief is obtainable by the action provided for by section 366, providing for an action whenever any person shall intrude into, or unlawfully hold, any public office, or when any association or number of persons shall act as a corporation without being incorporated.

QUO WARRANTO—BURDEN OF PROOF.

2. While, in ordinary civil actions, the burden rests on plaintiff to prove and allege his title to the thing in controversy, the rule is reversed

in *quo warranto* proceedings, and a defendant claiming to act under a public franchise has the burden of showing a franchise.

ELECTIONS—NOTICE—CONDITIONS PRECEDENT.

3. Where a statute requires notice of a special election such notice is a condition precedent to the validity of the election.

ELECTIONS—NOTICE—RETURNS.

4. The posting of election notices is not required to be made a matter of record.

EVIDENCE—PRESUMPTIONS.

5. Where the posting of election notices is not required to be made matter of record it is presumed in the absence of proof to the contrary that such notices were properly posted. Section 799, subd. 15, L. O. L., making it a disputable presumption that official duty has been regularly performed, and section 797 providing that a disputable presumption, unless overcome, is conclusive.

MUNICIPAL CORPORATIONS—POWERS.

6. While municipal corporations are capable of adopting and amending their charter, they are agencies of the State, and have only those powers incident and germane to the municipal government.

MUNICIPAL CORPORATIONS—BOUNDARIES—EXTENSIONS—"LOCAL LEGISLA-
TION"—"SPECIAL LEGISLATION."

7. Article XI, Section 2, Constitution of Oregon, grants to the legal voters of every city and town power to enact and amend their municipal charter, and Article IV, Section 1a, provides that the initiative and referendum powers reserved to the people are further reserved to legal voters of every district as to all local, special, and municipal legislation. *Held* that, as the words "local" and "special" mean enactments intended only to affect certain persons who operate in specified localities, an incorporated port cannot under a special election had under such powers extend its boundaries by annexing other territory without the consent of the inhabitants of the territory annexed, this being particularly true in view of Section 3209, L. O. L., and Laws of 1911, p. 158, § 3, both of which provide for the annexation of new territory to municipalities and ports only with the consent of the inhabitants of the territory to be annexed.

QUO WARRANTO—SUBJECTS OF PROTECTION:

8. The validity of an attempted annexation of territory to a municipality is properly tested by *quo warranto*.

QUO WARRANTO—ESTOPPEL—LACHES.

9. In the absence of any statutory period of limitation, an action in the nature of *quo warranto* in behalf of the people may be commenced at any time, lapse of time not working a bar by way of limitation or estoppel because it does not run against a sovereign.

APPEAL AND ERROR—DETERMINATION.

10. Under the direct provisions of Article VII, Section 3, Constitution of Oregon, as amended by Laws 1911, p. 7, the Supreme Court will,

where all the evidence is in the record, render the judgment which should have been rendered below.

From Tillamook: HENRY L. BENSON, Judge.

Statement by MR. JUSTICE BEAN.

This is an action in the nature of *quo warranto*, brought by the State upon the relation of S. V. Anderson and Lillian Anderson against H. T. Botts, A. G. Beals, D. Fitzpatrick, James Walton, Jr., M. F. Leach, and the Port of Tillamook, to determine the right of the defendants to act as a municipal corporation. From a judgment in favor of defendants, plaintiff appeals. The complaint is signed by the district attorney of the proper district. It alleges that the defendants are unlawfully exercising a public office and franchise within the State of Oregon, as officers of the Port of Tillamook, without the same being duly incorporated; that the alleged port is a *quasi* municipal corporation, attempted to be formed under the act of 1909 (Laws of Oregon, 1909, pp. 78-88); that the relators are residents and taxpayers within the territory of the pretended port; and that the defendants, as officers of such corporation, are attempting to issue a large amount of bonds and render the relators liable for the payment of a part thereof. The complaint avers in detail that the corporation and the acts of the defendants are illegal for the following reasons: (1) That the original Port of Tillamook was created by, and organized under, an act of the legislative assembly approved February 21, 1899 (Laws of Oregon 1899, pp. 419-423), and has ever since existed as a *quasi* municipal corporation; that it embraced all of the corporate limits of the City of Tillamook, and 50 feet on each bank of Hoquarton Slough from the east boundary of the city westward to and including Dry Stocking Bar; that the attempt to reincorporate the Port of Tillamook is void, because the proceedings therefor under the provisions of Chapter 39,

Laws of 1909 (Sections 6114 *et seq.* L. O. L.), by petition to the county court, and by an election held pursuant thereto, embraced the same territory as that included in the former port, together with a large additional area; (2) that no notice of the election for the incorporation of the present Port of Tillamook was published as required by law.

The defendants, in their answer, set up the proceedings under the act of 1909 for the organization of the port, and denied the other allegations of the complaint.

The reply put in issue the new matter contained in the answer. Upon the trial of the cause in the circuit court it was agreed that the burden of proof was upon the defendants, who introduced evidence, but produced none showing that notices of the election had been issued or posted. Plaintiff alleges that because of a failure to give notice of the special election a large number of legal voters, who were opposed to such proceedings, were prevented from voting, and that the result was thereby changed.    REVERSED.

For appellants there was a brief over the names of *Mr. Ralph R. Duniway* and *Mr. John H. McNary*, District Attorney, with an oral argument by *Mr. Duniway.*

For respondents there was a brief and an oral argument by *Mr. H. T. Botts.*

MR. JUSTICE BEAN delivered the opinion of the court.

The principal contentions on the part of plaintiff are (1) that there was no authority of law for organizing or reorganizing the present Port of Tillamook, and at the same time extending the boundaries thereof, so as to include territory outside the limits of the port as created by the act of 1899; (2) that in the attempt to organize or reorganize the Port of Tillamook the defendants did not show that they complied with the statutory requirement as to notices.

1. It is enacted by Section 366, L. O. L., that "An action at law may be maintained in the name of the State, upon the information of the prosecuting attorney, or upon the relation of a private party against the person offending, in the following cases: (1) When any person shall usurp, intrude into, or unlawfully hold, or exercise any public office, civil or military, or any franchise within this State, or any office in a corporation either public or private, created or formed by or under the authority of this State; or, (2) * * ; (3) when any association or number of persons act within this State, as a corporation, without being duly incorporated." By Section 363, L. O. L., the writ of *quo warranto* is abolished. It is, however, only the form that is abrogated by this section. The jurisdiction and power of the courts are not changed. The remedies heretofore obtainable under those forms may be obtained by an action at law. *State ex rel. v. Cook,* 39 Or. 377 (65 Pac. 89); *State ex rel. Sheridan* v. *Millis,* 61 Or. 245 (119 Pac. 763). For an elaborate discussion of an action in the nature of *quo warranto,* and the proceedings therein, see the opinion by Mr. Justice MOORE in the recent case of *State ex. inf. Brown* v. *Sengstacken,* 61 Or. 455 (122 Pac. 292).

2. We will take up the questions referred to in their inverse order. In an action partaking of the nature of *quo warranto,* in the absence of any legislation or controlling consideration to the contrary, the rule that the *onus probandi* is upon the respondent applies, and the defendants must prove the existence of the corporate franchise which they are alleged to have usurped, and their title to the offices, with the wrongful claim or usurpation of which they are charged. *State ex rel.* v. *Sharp,* 27 Minn. 38 (6 N. W. 408); 3 High, Ex. Legal Rem. § 629. We find that in ordinary civil actions the burden rests upon the plaintiff to allege and prove his title to

the thing in controversy.   In *quo warranto* proceedings we find the rule reversed, and it rests upon the respondent to show his title to the office or franchise in dispute. If he fails to show complete title, judgment is rendered against him.   While in civil actions plaintiff recovers upon his own title in an action in the nature of a *quo warranto*, the respondent must show that he has a good title as against the government.   High, Ex. Legal Rem. (3 ed.), § 712.   Mr. Dillon in his work on Municipal Corporations (volume 4 [5 ed.], § 1555), says:

"In a proceeding by information in the nature of a *quo warranto* the defendant must either disclaim or justify.   If he disclaims, the State is at once entitled to judgment.   If he justifies, he must set out his title specifically.   It is not enough to allege generally that he was duly elected or appointed to the office.   He must plead facts, showing on the face of the plea that he has a valid title to the office.   The State is not bound to show anything."

In Section 1554 of the same volume, we find the following:

"The certificate of election of an officer, or his commission, coming from the proper source, is *prima facie* evidence in favor of the holder; and in every proceeding, except a direct one to try the title of such holder, it is conclusive; but in *quo warranto* the court will go behind the certificate or commission, and inquire into the validity of the election or appointment, and decide the legal rights of the parties upon full investigation of the facts."

3.   It is a well-settled rule in Oregon that the notices required by statute to be given for a special election constitute a condition precedent which must be observed in order to validate the measures to be voted upon at such election.   *Marsden* v. *Harlocker,* 48 Or. 90 (85 Pac. 328: 120 Am. St. Rep. 786) ; *Guernsey* v. *McHaley,* 52 Or. 555 (98 Pac. 158) ; *Wright* v. *City of McMinnville,* 59 Or. 397 (117 Pac. 298).   The purpose of the notices is to

inform the legal voters of the time, place, and object of the election.    *State ex inf.* v. *Sengstacken,* 61 Or. 455 (122 Pac. 292).

4, 5.  Considering now the evidence produced by defendants, it appears that a petition, containing the requisite number of signatures, was presented to the county court of Tillamook County, requesting that the question of incorporating the port be submitted to the legal voters; that the county court made an order providing for the holding of a special election therefor, and directing the county clerk to give notice of such election to be held on the 24th day of August, 1909; that at a special session of the court on the 31st day of August, 1909, 248 votes having been cast in favor of incorporating the port and 172 votes against the same, the court made and entered a proclamation declaring the Port of Tillamook to be duly incorporated as a municipal corporation, pursuant to the act of 1909; that thereafter the Governor appointed a board of five commissioners for said port, consisting of the defendants H. T. Botts, A. G. Beals, D. Fitzpatrick, James Walton, Jr., and M. F. Leach, who duly qualified; that the commissioners H. T. Botts and D. Fitzgerald were re-elected at the general election November 8, 1910, their terms having expired; and that they qualified as such commissioners.  Their certificates of election and appointment were produced in evidence.  As far as the form of the proceedings is concerned, we think the defendants made a *prima facie* case.  The statute does not require a record of the posting of such election notices.  Section 799, subd. 15, L. O. L., makes it a disputable presumption that official duty has been regularly performed.  Section 797, L. O. L., reads:

"A presumption, unless declared by law to be conclusive, may be overcome by other evidence, direct or indirect; but unless so overcome, the jury are bound to find according to the presumption."

The defendants show a compliance with the statute up to the time that it was the duty of the clerk to issue and mail notices to the judges and clerks of the election in the different precincts. Then the law steps in with the presumption that this official duty has been regularly performed, which in itself stands as *prima facie* evidence that the notices were issued and posted. *Lane County v. Neilon,* 44 Or. 14, 21 (74 Pac. 212). Presumptions of this character are made a part of the substantive law of this State by statutory enactment. In *State ex inf. Brown v. Sengstacken,* 61 Or. 455 at page 468 (122 Pac. 297), it is said: "In elections to incorporate ports, neither the judges nor the clerks are required to make any return of the posting of election notices. *Bennett Trust Co. v. Sengstacken,* 58 Or. 333 (113 Pac. 863). This duty never having been imposed by statute, it will be assumed, without deciding the question, that the 14 notices, in respect to which no evidence was offered, were properly presumed by the trial court to have been regularly posted"—citing *Wheat v. Smith,* 50 Ark. 266, 276 (7 S. W. 161). It is laid down as a rule, in 15 Cyc. 326, that, where an election has been held and the will of the voters has been executed by the proper authority, it may be presumed that due notice of the election was given. Under the rule that the performance of a prior act is necessary to the legality of a subsequent act, proof of the latter carries with it a presumption of the due performance of the former. *Knox County v. Ninth National Bank,* 147 U. S. 91 (13 Sup. Ct. 267: 37 L. Ed. 93) ; *Brownell v. Palmer,* 22 Conn. 106. The circuit court found that, pursuant to the order of the county court, the county clerk duly issued notices for the holding of a special election called by such order; that the notices were transmitted to the respective judges and clerks of the election in the various precincts described in the petition; and that the notices were, by such judges

and clerks, duly posted within their several precincts more than 10 days prior to the holding of such election. This finding was warranted by the evidence.

6, 7. The real cause of the controversy in this case was the extension of the limits of the original Port of Tillamook. It is asserted by the relators that there was no statute authorizing incorporated ports to extend their boundaries until the passage of the act of 1911. See Laws of Oregon 1911, p. 157. It was therefore impossible for the Port of Tillamook, as created by the act of 1899, and known as the legislative port, to take proceedings in 1909 to reorganize and extend its boundaries at a time when there was no authority of law therefor. The portions of the amendments to the constitution applicable to this question are as follows:

"The legal voters of every city and town are hereby granted power to enact and amend their municipal charter, subject to the Constitution and criminal laws of the State of Oregon." Article XI, Section 2, Constitution of Oregon.

"The initiative and referendum powers reserved to the people by this constitution are hereby further reserved to the legal voters of every municipality and district, as to all local, special, and municipal legislation, of every character, in or for their respective municipalities and districts. The manner of exercising said powers shall be prescribed by general laws, except that cities and towns may provide for the manner of exercising the initiative and referendum powers as to their municipal legislation. Not more than 10 per cent of the legal voters may be required to order the referendum nor more than 15 per cent to propose any measure, by the initiative, in any city or town." Article IV, Section 1a, Constitution of Oregon.

In ingrafting these amendments into the fundamental law of this State, the people inaugurated a scheme for local self-government. They paved the way for the enactment of local or special measures. The qualifying

words, "local" and "special," relating to municipal legislation, as used in Article IV, Section 1a, are synonymous terms, and mean enactments intended to affect only certain persons, or to operate in specified localities only. *Acme Dairy Co.* v. *Astoria,* 49 Or. 520, 523 (90 Pac. 153). See, also, *Cook* v. *Port of Portland,* 20 Or. 580 (27 Pac. 263: 13 L. R. A. 533) ; *Farrell* v. *Port of Portland,* 52 Or. 582 (98 Pac. 145). We quote from a note in 36 Cyc. at page 987, as follows:

"The term 'local,' as applied to statutes, is of modern origin, and is used to designate an act which operates only within a single city, county, or other particular division or place, and not throughout the entire legislative jurisdiction. In this sense, the term 'local' is the antithesis of 'general' "

—citing *State* v. *Sayre,* 142 Ala. 641 (39 South. 240: 4 Ann. Cas. 656) ; *McGregor* v. *Baylies,* 19 Iowa 43. See, also, *Schubel* v. *Olcott,* 60 Or. 503 (120 Pac. 375, 378) ; *Farrell* v. *Port of Columbia,* 50 Or. 169 (91 Pac. 546: 93 Pac. 254). The distinction between a general law and a local law is not easily defined. It has often been found expedient to leave the matter open to a considerable extent for determination upon the special circumstances of each case. *Ferguson* v. *Ross,* 126 N. Y. 459 (27 N. E. 954). In the absence of any clear and express declaration to that effect, in the amendments to our organic law, which are the source from which the authority emanates, only those powers incident and germane to the municipal government may be deemed to be delegated or reserved. Such municipal corporations are always subject to the control and regulation of the lawmakers of the State in the manner directed by the constitution. *City of McMinnville* v. *Howenstine,* 56 Or. 451, 456 (109 Pac. 81). While these public corporations are capable of adopting and amending their charter, they still continue to be agencies of the State. A general

control is left in the legislative assembly. At the same
time the people retain, under the initiative and referen-
dum, full power over them. Therefore such municipal
authority to act upon local matters should be exercised
with due regard to the right of adjoining localities, and
in harmony with the general plan of home rule. If a
municipal corporation is permitted to extend its bound-
aries, step by step, indefinitely, without the sanction of
the State or the people of the districts included in the
extensions, it would be subversive of the very plan as
expressed by the people in their sovereign power through
the ballot, and not a reasonable exercise of the power
conferred. To this extent the proceedings in question
are not "local" or "special" within the meaning of the
constitution, and are not germane to the government of
the port. They are inconsistent with the plain import
of our organic law. *Straw* v. *Harris,* 54 Or. 424 (103
Pac. 777) ; *Farrell* v. *Columbia,* 50 Or. 169 (91 Pac.
546: 93 Pac. 254). Section 3209, L. O. L., authorizing
the annexation of new territory to municipal corpora-
tions, requires the consent of the people of the area to
be annexed. The same safeguard is contained in the
act of 1911, which provides for the changing of the
boundaries of ports, and prescribes the manner for pro-
ceeding to annex new territory thereto. See Section 3,
Chapter 115, Laws 1911. This is a salutary require-
ment, and seems to be the policy of the law. It is within
the spirit and letter of the constitutional provision for
the enactment of local measures by means of the initi-
ative. We know of no authority, either delegated or
reserved to the people of a municipal corporation, per-
mitting the enactment of a local measure for the exten-
sion of the boundaries of the municipality so as to include
a large section of country, without the consent of the
legal voters who reside in the area to be annexed. There
is no doubt but that the people of the whole State could

pass such a law. Sections 355, 356. The assumption of such power by the Port of Tillamook is not in consonance with our laws granting to municipalities and districts the privilege to enact local or special laws. It was held in *McBee* v. *Town of Springfield,* 58 Or. 459 (114 Pac. 637), that it was a reasonable exercise of the initiative power for the people to change the boundaries of the town in accordance with the provisions of Section 3209. In the case at bar the measures taken for annexation are not reasonably within the generic term of municipal legislation. *Acme Dairy Co.* v. *Astoria,* 49 Or. 520, 523 (90 Pac. 153). Such proceedings are not local or special within the meaning of that part of the constitution above quoted. *Schubel* v. *Olcott,* 60 Or. 503 (120 Pac. 375, 378). An attempt was made to repeal the charter granted to the Port of Tillamook by the legislature. *McKeon* v. *City of Portland,* 61 Or. 385 (122 Pac. 291).. The effect thereof was not a reorganization of the port within the contemplation of the provisions of the Laws of 1909. We see no reason why the original Port of Tillamook is not a valid corporation.

It appears that the main purpose of the election was to change the boundaries of the Port of Tillamook so as to embrace new territory. The question of annexation was not submitted in such a manner as to allow the legal voters of the area to be annexed to vote separately from those within the limits of the municipality. It is indicated, as far as can be ascertained from the ballot, that the outside voters were opposed to annexation. The electoin held, and the action taken pursuant thereto, did not effectuate an enlargement of the port, and were unauthorized and void.

8. A *quo warranto* action is a proper proceeding to test the validity of such attempted reorganization. *State ex rel.* v. *Dunson,* 71 Tex. 65 (9 S. W. 103) ; *J. T. Harness* v. *State of Texas,* 76 Tex. 566 (13 S. W. 535) ; *Butler*

v. *Walker,* 98 Ala. 358 (13 South. 261: 39 Am. St. Rep. 61) ; *State ex rel.* v. *New Whatcom,* 3 Wash. 7, 10 (27 Pac. 1020).

9. It is claimed on the part of defendants that the State is estopped from proceeding in this case on account of laches. The reorganization was attempted to be effected in August, 1909, and this action was commenced June 14, 1911. It is seldom that laches are imputed to a State in a *quo warranto* action to test the legality of an incorporation where the rights of the public are involved. We think there is no merit in this claim. *State of Texas ex rel.* v. *Wofford,* 90 Tex. 514 (39 S. W. 921) ; *Attorney General ex rel.* v. *Lowrey,* 131 Mich. 639 (92 N. W. 289) ; *People ex rel.* v. *Gary,* 196 Ill. 310 (63 N. E. 749) ; *Commonwealth* v. *Allen,* 128 Mass. 308; *Attorney General* v. *Marr,* 55 Mich. 445 (21 N. W. 883). In the absence of any statutory period of limitation, it is held in this country that an action in the nature of a *quo warranto* in behalf of the people may be commenced at any time; that the lapse of time constitutes no bar to the proceeding in conformity with the maxim, *"nullum tempus occurrit regi." Catlett* v. *People ex rel.,* 151 Ill. 16 (37 N. E. 855) ; *State of Rhode Island* v. *Pawtuxet Turnpike Co.,* 8 R. I. 521 (94 Am. Dec. 123).

10. A discussion of many of the questions referred to in the briefs would be unfruitful, as the necessary legislation for the extension of the boundaries of incorporated ports was enacted in 1911. See Laws of Oregon 1911, p. 157. In conformity with Section 3, Article VII, of the Constitution of this State (Laws 1911, p. 7), all of the evidence being contained in the record, the judgment of the lower court will be reversed, and a judgment entered here in accordance with this opinion.

REVERSED.