Argued March 2, reversed March 16, 1915.

## WEST LINN *v.* TUFTS, COUNTY TREASURER.

(146 Pac. 986.)

**Municipal Corporations—Powers of—Charter.**
  1. While Laws of 1913, page 689, authorizes municipalities to amend their charters, a self-constituted city cannot, by amending its charter, require the county treasurer to pay over to it road taxes collected from property within its boundaries.

From Clackamas: JAMES U. CAMPBELL, Judge.

In Banc.    Statement by Mr. Justice Burnett.

This is a proceeding by *mandamus* by West Linn, a municipal corporation, against J. A. Tufts, as Treasurer of Clackamas County, in which a writ was issued by the Circuit Court of said county, commanding the defendant to turn over to the plaintiff, a municipal corporation, all moneys collected by him during the year 1914 from road taxes levied by the local County Court upon property within plaintiff's limits or to show cause why he has not done so. As a reason for not obeying the writ, the defendant demurred to the same on the grounds: (1) That the court has no jurisdiction of the person of the defendant or of the subject matter of the action, except on writ of review from the County Court; (2) that there is a defect of parties defendant in that the members of the board of county commissioners are not joined in the action; and (3) that the writ does not state facts sufficient to constitute a cause of action. The Circuit Court overruled the demurrer, and, as the defendant declined to plead further, made the writ peremptory, from which judgment the defendant appeals.                                Reversed.

For appellant there was a brief over the names of *Mr. B. N. Hicks* and *Mr. Gilbert L. Hedges,* District Attorney, with an oral argument by *Mr. Hicks.*

For respondent there was a brief and an oral argument by *Mr. L. Stipp.*

Mr. Justice Burnett delivered the opinion of the court.

The plaintiff is a self-constituted municipal corporation organized by the vote of its people August 14,

1913, presumably under the sanction of Chapter 345, Laws of 1913. Having thus assumed municipal functions, the legal voters therein on December 29th of the same year enacted a new charter containing the following:

"Sec. 181. All road money collected during 1914 and subsequent years, arising from road taxes on property in West Linn levied by the County Court of Clackamas County or collected under the general laws for the improvement of roads and streets within said city shall belong exclusively to West Linn and be under the exclusive control of the council of West Linn. The treasurer of Clackamas County shall keep such money separate and apart from other money coming into his hands and not deposit it in any county fund, and shall from time to time as often as once in each three months turn the said money then in his hands over to the treasurer of West Linn. West Linn shall use the said money for the construction and repair of its roads and main traveled thoroughfares but may use any of said money for the construction or repair of the county roads outside of and leading into West Linn. The city engineer shall perform the duties of supervisor as required by the general laws of this state relating to streets and highways, and he shall report to and be under the direction of the council and not to the County Court or county commissioners of Clackamas County or the county in which West Linn is situated."

By virtue of this section, the plaintiff assumes to direct the defendant, as County Treasurer, to deliver to it road taxes levied by the county upon and collected from property within the corporate limits of the plaintiff. Referring to the amendment of city charters by the legal voters of the municipality, Mr. Justice KING in *Straw* v. *Harris,* 54 Or. 424, 435 (103 Pac. 777, 781), says:

"The power to do so, however, is derived from the people of the state, and is necessarily limited to the

exercise of such powers, rights, and privileges as may not be inconsistent with the maintenance and perpetuity of the state, of which public corporations are but the mere instrumentalities of government. In other words, the powers thus acquired do not rise higher than their source.''

Again, in *State ex rel.* v. *Port of Tillamook,* 62 Or. 332, 341 (124 Pac. 637, 640, Ann. Cas. 1914C, 483), Mr. Justice BEAN says:

''Such municipal corporations are always subject to the control and regulation of the lawmakers of the state in the manner directed by the Constitution: *City of McMinnville* v. *Howenstine,* 56 Or. 451, 456 (109 Pac. 81, Ann. Cas. 1912C, 193.) While these public corporations are capable of adopting and amending their charter, they still continue to be agencies of the state. A general control is left in the legislative assembly.''

Likewise says Mr. Justice MOORE in *State* v. *Hearn,* 59 Or. 227, 233 (117 Pac. 412, 413):

''It is an axiom that no creature can ever become greater than its creator, and, as corollary deducible from this principle, the rule is universal that the police power cannot be bargained away in such a manner as to place it beyond recall.''

It is laid down in *Kime* v. *Thompson,* 60 Or. 183, 188 (118 Pac. 174, 176), that:

''The power of taxation is an attribute of sovereignty vested in the County Court, and, unless the statute creating the power points out its limitations, the court cannot control the county commissioners by *mandamus,* nor restrain them by injunction, in respect to the exercise of that power.''

While the Constitution has empowered the legal voters of every city and town to enact and amend their municipal charters, subject to the Constitution and criminal laws of the state, it was never intended that

the state should lose control over its municipalities in whatever form they existed, much less that it should at their command surrender to them, or any of them, any control of its sovereignty. As said by Mr. Justice KING in *Straw* v. *Harris,* 54 Or. 424, 435 (103 Pac. 777, 781), "it would but lead to sovereigntial suicide," expressing the view of the subject from the standpoint of the state. On the other hand, to permit any limited number of citizens to organize themselves into a municipal corporation, arrogating in any degree independent powers and demanding contribution from the funds raised by the authority of the parent state, would be to recognize incipient secession, a result which has no sanction in any power short of successful revolution. If the plaintiff of its own motion may demand funds raised by the county as road taxes, with equal authority it may exact contributions from any other money in the county treasury, no matter from what source it is derived.

In *State ex rel.* v. *Port of Tillamook,* 62 Or. 332, 341 (124 Pac. 637, 640, Ann. Cas. 1914C, 483), Mr. Justice BEAN said:

"If a municipal corporation is permitted to extend its boundaries, step by step, indefinitely, without the sanction of the state or the people of the districts included in the extensions, it would be subversive of the very plan as expressed by the people in their sovereign power through the ballot, and not a reasonable exercise of the power conferred."

By a parity of reasoning, if a self-constituted municipality in one instance can assume authority over the exercise of the taxing power vested in the state, and so vitally essential to its existence, the like assumption may be enlarged *ad libitum* to the subversion of state government. We cannot assume to direct by *man-*

*damus* the levy of any tax under such circumstances. Neither at the behest of the plaintiff, as disclosed by the record before us, can we control the disposition of the funds derived from those taxes.

The judgment is reversed, with directions to dismiss the writ.                                 REVERSED.