Submitted on record and briefs March 13, affirmed June 27, reconsideration denied August 31, petition for review denied September 18, 1984

GOLDSTEIN et al,
*Appellants,*

*v.*

RADAKOVICH et al,
*Respondents.*

(A8209-05754; CA A26279)

683 P2d 149

Ron McCarty and Bob Goldstein, Portland, filed the briefs in propria personae for appellants.

Dave Frohnmayer, Attorney General, William F. Gary, Solicitor General, and Kay Kiner James, Assistant Attorney General, Salem, filed the brief for respondent Norma Paulus.

John B. Leahy, County Counsel for Multnomah County, attorney for respondent William Radakovich, joined in the brief of respondent Norma Paulus.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

This dispute arose from plaintiffs' attempt to have their names placed on the 1982 general election ballot. One sought the office of Multnomah County Assessor, the other Multnomah County Clerk. They sought nomination to those offices by an assembly of electors. *See* ORS 249.735. The issue is whether plaintiffs were properly nominated by qualified assembly electors. The trial court ruled that they were not. We agree and affirm.

On July 23, 1982, plaintiffs held an assembly of electors on the sidewalk in front of a business in downtown Portland. The assembly was called to order at 11:10 a.m., and the signatures of electors began to be collected. About 10 p.m. that evening, the chairman of the assembly announced that the number of electors necessary to constitute an assembly had registered. Plaintiffs' names were then placed in nomination and, according to the minutes of the assembly, were "accepted in turn unanimously by the assembled electors." Plaintiffs filed certificates of nomination with the Multnomah County Clerk on August 20. They expected their names to appear on the November 2 ballot.

On August 24, the Secretary of State's office received a complaint from the "Committee for Fair Government" alleging that the required number of electors had not been present at the assembly and requesting an investigation. The Secretary of State conducted an investigation. She concluded that the required number of electors had not been present and, by letter dated August 27, 1982, directed the County Clerk "to remove" plaintiffs' names from the ballot.

Plaintiffs sought review of the Secretary's directive by filing a complaint in the Multnomah County Circuit Court. *See* ORS 246.910(1). They alleged that defendants acted in an arbitrary and capricious manner and deprived them of their civil rights. They also filed a motion for a temporary restraining order to prevent the Secretary from distributing the Voter's Pamphlet in Multnomah County until they could be included. A hearing was held on October 7, 1982. Plaintiffs first moved for a "directed verdict"[1] on the grounds that the

---

[1] A directed verdict is not available in civil cases tried by the court. We treat plaintiffs' motion as a motion for summary judgment under ORCP 47. *See Angus v.*

Secretary of State had no authority to direct the Multnomah County Clerk to remove their names from the ballot and that she had failed to follow the complaint procedure for alleged election offenses. *See* ORS 260.345. The trial court denied plaintiffs' motions and entered judgment for defendants. Plaintiffs appeal.

ORS 249.735(2) provides, in pertinent part, that:

"* * * *Not less than the minimum number of electors required to constitute an assembly of electors* shall have recorded their signatures in the minutes of the assembly and *must be present when the assembly nominates a candidate.* * * *" (Emphasis supplied.)

ORS 249.737(1) provides, in pertinent part:

"* * * The filing officer shall insure that *when the assembly of electors makes a nomination,* the number of electors required to be present at the nominating convention for the purpose of constituting an assembly is at least equal to each of the following:

"(a) The number of signatures of assembly members in the minutes of the assembly.

"(b) The number of electors present at the nominating convention * * *." (Emphasis supplied.)

Those statutes, read together, require that the minimum number of electors required to constitute an assembly be *present* when a candidate is nominated and that the filing officer insure that *at least* that number of electors was present when a nomination was made. To be nominated for county office by an assembly of electors, the minimum number of electors is 250. ORS 249.735(1)(c). Plaintiffs concede that, when they were nominated, there were not 250 electors present. They argue that having at least 250 electors *registered* is sufficient, whether those electors are present or not when a nomination is made. In view of the plain language of the statutes, we disagree.

The next question is whether the Secretary of State was required to follow the procedure for complaints of election offenses specified in ORS 260.345 on finding that 250 electors

*Joseph,* 60 Or App 546, 550, 655 P2d 208 (1982), *rev den* 294 Or 569, *cert den* (1983); *Castro and Castro,* 51 Or App 707, 626 P2d 950 (1981).

were not present. That procedure requires the Secretary to conduct an initial investigation on receiving a complaint that an election law has been violated and then to refer the matter to the Attorney General for prosecution if the Secretary believes that a violation has occurred. However, the procedure for complaints of election offenses is not applicable to the complaint filed here. The complaint did not allege an "offense" subjecting plaintiffs to prosecution under any statute of which we are aware. It simply alleged that the assembly of electors did not meet the requirements of ORS 249.735 and, therefore, could not have legally nominated plaintiffs.

The complaint raised a question as to the validity of the certificates of nomination filed by plaintiffs. Filing officers have authority to verify the validity of the contents of nomination certificates. ORS 249.004(1). Although the filing officer in this case was the Multnomah County Clerk, ORS 249.722(2)(b), the complaint was made to the Secretary of State. As the officer responsible to "obtain and maintain uniformity in the application, operation and interpretation of the election laws," ORS 246.110, the Secretary of State had a duty to investigate the complaint that plaintiffs' certificates of nomination had been filed without the statutory requirements for nomination having been satisfied. Once the Secretary of State determined that plaintiffs' certificates of nomination were not valid, she had a duty to direct that plaintiffs' names be removed from the ballot. *See* ORS 254.165; *McAlmond v. Myers, Corbett,* 262 Or 521, 524, 500 P2d 457 (1972).

The final question is whether plaintiffs were denied due process as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, because they were not granted a hearing before the Secretary directed that their names be removed from the ballot. Plaintiffs cite no authority for the proposition that the Secretary's directive deprived them of any right. Assuming, however, that they did have some right protected by the Due Process Clause, they failed to show that the process provided by ORS 246.910 was inadequate to protect that right. That statute provides a direct appeal to the Circuit Court, and then to this court, for any person adversely affected by a directive of the Secretary issued under the election laws. Both courts have discretion to conduct a timely hearing "as the circumstances require."

Here, the Secretary of State's directive was issued on August 27. Plaintiffs' complaint was not filed until September 23. A hearing was held on October 7. We conclude that the process provided by ORS 246.910 did afford plaintiffs an opportunity for a hearing on the contested issue at a meaningful time and in a meaningful manner. That is all the due process required in this case. *See Fuentes v. Shevin,* 407 US 67, 80, 92 S Ct 1983, 32 L Ed 2d 556 (1972).

Affirmed.