Argued and submitted May 4, reversed and remanded with instructions May 6, reconsideration denied May 10, petition for review allowed May 12, 1988 (305 Or 671)
See 305 Or 641, 756 P2d 630 (1988)

# CITY OF EUGENE,
*Respondent,*

*v.*

# ROBERTS et al,
*Appellants.*

## (16-88-02472; CA A48266)

756 P2d 643

Janet Metcalf, Assistant Attorney General, Salem, argued the cause for appellants. With her on the memorandum were Dave Frohnmayer, Attorney General, and Mark Braverman, Assistant Attorney General, Salem.

Timothy J. Sercombe, Eugene, argued the cause for respondent. With him on the memoranda were Stanton F. Long, and Harrang, Long, Watkinson & Arnold, P.C., Eugene.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Defendant Roberts is the Secretary of State of Oregon. Defendants Faw and Spriggs are election officials of Lane County. The three appeal from a judgment for the plaintiff city of Eugene in this action under ORS 246.910, in which the city challenged the secretary's directive to the other defendants, and their compliance with her directive, that an "advisory question" which the city council sought to submit to Eugene's voters not be placed on the May, 1988, state primary election ballot. The trial court granted summary judgment for the city and ordered defendants to put the question on the ballot. We reverse.

The advisory question which defendants rejected was the second of two. The first (which defendants approved for the ballot) asked, *inter alia,* "Shall Eugene be a nuclear-free zone?" The second was: "Which nuclear-free zone ordinance should the Eugene City Council adopt?" The voters would then have been asked to select between an "Option A," and an "Option B" ordinance, with the instruction "Vote for one." Defendants maintain that, to qualify for ballot placement, the second question must but does not comply with the statutory requirements for a "measure." The city makes three basic arguments: that defendants lacked authority to keep the question off the ballot; that the question is not required by the applicable statutes to comply with the requirements for "measures"; and that the city has adopted an ordinance which authorizes the format it used for the submission of the advisory question, and that ordinance rather than state law governs here either because it is not inconsistent with state law or because it prevails over state law by virtue of the city's home rule authority.

The city's first argument—defendants' authority—presents the most difficult question. Defendants cite ORS 246.110 and 246.120 as the source of the Secretary of State's authority to issue the directive. Those statutes provide:

"The Secretary of State is the chief election officer of this state, and it is the secretary's responsiblity to obtain and maintain uniformity in the application, operation and interpretation of the election laws." ORS 246.110.

"In carrying out the responsibility under ORS 246.110, the Secretary of State shall prepare and distribute to each county

clerk detailed and comprehensive written directives, and shall assist, advise and instruct each county clerk, on registration of electors and election procedures which are under the direction and control of the county clerk. The directives and instructions shall include relevant sample forms of ballots, documents, records and other materials and supplies required by the election law. A county clerk affected thereby shall comply with the directives or instructions." ORS 246.120.

Defendants then cite ORS 246.200(1) and 246.210(1) as the source of the county defendants' authority to carry out the secretary's directive. They provide:

"Except as specifically provided otherwise in the statute laws of this state, the county clerk shall be the only election officer to conduct any election in this state. For the purpose of this section, the conduct of an election includes, but is not limited to, establishing precincts and polling places, preparing ballots and sample ballots, and receiving and processing votes." ORS 246.200(1).

"Subject to the directives and instructions prepared and distributed or given by the Secretary of State under ORS 246.120 or 246.140, a county clerk may exercise general supervision of administration of election laws by each local election official in the county for the purpose of achieving and maintaining a maximum degree of correctness, impartiality, efficiency and uniformity in the administration by local election officials. In this regard the county clerk may assist local election officials in answering questions concerning the proper administration of election laws." ORS 246.210(1).[1]

The city does not agree that any of those statutes confers authority on defendants to "cancel an election."[2] It argues:

"The Secretary of State has no express or implied statutory power to direct a county clerk not to hold an election ordered by a local governing body. Her power to issue directions to a county clerk is limited to *how* to conduct an election, not *whether* to hold an election." (Emphasis the city's.)

---

[1] The county defendants exercise the county clerk's responsibilities in connection with elections. *See* ORS 246.012(2).

[2] Defendants state, correctly, that the city's recurrent use of terms such as the quoted one is misleading. The more accurate description of defendants' actions is that they refused to place a proposal which they consider to be contrary to the state's election laws on a state primary ballot.

We have interpreted the secretary's authority under ORS 246.110 more broadly than the city does. In *Goldstein v. Radakovich,* 68 Or App 843, 683 P2d 149, *rev den* 297 Or 824 (1984), we upheld the secretary's direction to a county clerk to remove from the ballot the names of candidates whose nominating assembly was not attended by the required number of electors. We said:

> "As the officer responsible to 'obtain and maintain uniformity in the application, operation and interpretation of the election laws,' ORS 246.110, the Secretary of State had a duty to investigate the complaint that plaintiffs' certificates of nomination had been filed without the statutory requirements for nomination having been satisfied. Once the Secretary of State determined that plaintiffs' certificates of nomination were not valid, she had a duty to direct that plaintiffs' names be removed from the ballot." 68 Or App at 847.

The city also suggests that the secretary should have proceeded in circuit court under ORS 246.820(1) rather than through her unilateral directive. That statute provides:

> "Whenever it appears to the Secretary of State that a county clerk or a local election official has failed to comply with an interpretation of any election law made by the Secretary of State under ORS 246.110 or has failed to comply with a rule, directive or instruction made by the Secretary of State under ORS 246.120, 246.140 or 246.150, the Secretary of State may apply to the appropriate circuit court for an order to compel the county clerk or local election official to comply."

We do not think that the statute aids the city. The secretary had no occasion to proceed against a clerk or election official here, because the county defendants complied with her directive. Indeed, ORS 246.820(1) is far more injurious than beneficial to the city's argument: it provides that the secretary is entitled to judicial *enforcement* of her instructions to county election officials, not that she must seek judicial *sanction* of the directives.

The city contends next that the secretary's authority to direct county clerks under ORS 246.110 and 246.120 extends only to matters which the clerks themselves have authority to do, and that "cancel[ing] an election called by a city council" is not among those matters. It explains:

> "Defendants argue that the clerk's ORS 246.200 duty to 'prepar[e] ballots' is more than ministerial, that this duty allows

the county clerk to determine which measures and items should be on the ballot. Under their construction of ORS 246.200, the county clerk must examine the procedural and substantive validity of each measure or item on the ballot, and reject any measure or item which is inconsistent with law. That is what Defendants Faw and Spriggs did here. Only if county clerks have this discretionary power is Defendant Roberts' directive to Defendants Faw and Spriggs to exercise this power appropriate under ORS 246.120. Only if they have this power are Defendants Faw and Sprigg's decisions to follow this directive, proper.

"Drawing this adjudicative authority from the ministerial duty to 'prepar[e] ballots' under ORS 246.200 is quite a trick. The *duty* to prepare ballots does not confer the *power* to adjudicate the propriety of anything on the ballot. The statute confers no such express power." (Emphasis the city's.)

We disagree. ORS 246.200(1) is a broad grant of authority, and it states that the powers it enumerates are not a limitation on the general authority of clerks in connection with the conduct of elections. Moreover, it must be read in conjunction with ORS 246.210(1), which, subject to the secretary's directives and instructions, gives county clerks the authority to supervise the administration of election laws by local election officials in the county. Moreover, it would make no sense for the secretary to have the broad powers she enjoys to interpret, enforce and instruct county clerks concerning the election laws if they, in turn, have as little authority as the city suggests to carry out her instructions.

The city next argues that defendants' exclusive recourse for moving against a city ballot title is through a circuit court proceeding under ORS 250.296, which provides for judicial review of city ballot titles. However, the ballot title is not relevant to the issue here; the issue is whether the city's second question itself, not its title, qualifies for placement on the ballot.[3]

The city's remaining argument which warrants discussion on the authority question is:

"The Supreme Court has consistently held that neither the Secretary of State nor the county clerk has the power to

---

[3] For the same reason, the city's other arguments which treat the ballot title as being central to the issues are unmeritorious.

refuse to conduct an election because of a substantive concern about the validity of an election measure or because of a ballot title defect. *See e.g., Maginnis v. Childs,* 284 Or 337, 339, 587 P2d 460 (1978)."

However, *Maginnis* and similar cases hold that a measure cannot be excluded from the ballot on the ground that, if enacted, it would be substantively invalid or unlawful. Those cases are not authority for allowing proposals to be placed on the ballot which do not meet constitutional or statutory requirements for placement. The court explained the difference in *Maginnis:*

"Initiative measures must be placed on the ballot for vote. That they may be invalid or ineffective is not grounds for a court or other official to keep them off the ballot. * * *

"The one exception is if the proposed measure is legally insufficient to be placed on the ballot." 284 Or at 339. (Citations omitted.)

■    We conclude that the county defendants, acting pursuant to the secretary's directions, have statutory authority to refuse to place a city question on the state primary election ballot if the question does not satisfy statutory requirements for ballot placement. The next issue is whether defendants were correct in concluding that the second question does not. ORS 254.005(7) provides:

" 'Measure' includes any of the following submitted to the people for their approval or rejection at an election:

"(a)   A proposed law.

"(b)   An Act or part of an Act of the Legislative Assembly.

"(c)   A revision of or amendment to the Oregon Constitution.

"(d)   Local, special or municipal legislation.

"(e)   *A proposition or question.*" (Emphasis supplied.)

To the same effect, *see, e.g.,* ORS 250.005(3). ORS 254.145(6) provides, as relevant:

"The ballot shall be printed to give the elector a clear opportunity to designate the elector's choice for candidates and approval or rejection of measures submitted."

The city argues, *inter alia,* that the requirements of

the latter statute do not apply because the question it sought to submit is not a "measure." The city states:

> "The advisory question is not a 'measure' under this definition for two reasons. It is not a law, proposition or question 'submitted to the people for their approval or rejection at an election.' 'Measures' are matters submitted to a vote where the vote has binding effect, where the question will be approved or rejected. Advisory questions are not approved or rejected. The vote on an advisory question has no binding effect. Advisory questions of whatever nature are not 'measures.' "

■■ We again disagree. There is nothing about the word "advisory" that makes a question something other than a "proposition or question," and therefore something other than a "measure" within the statutory definition. Defendants also say that the city's proposed question is not a "measure." We understand defendants to mean, however, that the question does not meet the statutory qualifications for a measure. We think that the correct characterization of defendants' argument is that the second question *is* a measure, as statutorily-defined, but that it is a defective one, in that it does not comply with the requirement of ORS 254.145(6) that voters be given the clear opportunity to approve or reject it. We agree with defendants that the question does not satisfy that requirement. The format of the question does not enable the voters to signify approval or rejection of both options. Therefore, they cannot approve *or* reject the measure in its entirety. Moreover, the question does not permit the voters to express actual approval or disapproval of *either* option, as distinct from selecting which of the two they prefer.

None of the parties contends that the first and second questions were intended to be interdependent. Even if they were so regarded, however, the format of the questions does not enable the voters to signify approval of or opposition to either or both of the options in the second question. Some voters might favor the concept of a nuclear-free zone but disfavor both of the specific alternative ordinances described in the second question.

Defendants also appear to argue that only candidates and measures may be placed on a primary ballot. We need not decide whether that is correct. The basis for our decision is

that the city's question *is* a measure, as defined by statute, and that it does not fulfill conditions imposed by statute for a measure to be placed on the ballot. We agree with defendants that placing the question on the ballot would violate state law.

██ ██  The city next argues that its ordinance pertaining to "advisory questions" is compatible with state law, and should therefore be followed here rather than state law. For the reasons we have stated, insofar as that ordinance would allow the second question to appear on the ballot, it is not consistent with state law. The city contends, alternatively, that its ordinance should be followed, even if it is inconsistent with the statutes, because the city's home rule powers require that its legislation prevail over the state laws. We do not agree that the constitutional home rule provisions require or permit city legislation to supercede contrary statutory requirements relating to the state primary election ballot. A uniform and workable system governing that subject is clearly a substantive policy objective of the state, which is not inconsistent with the city's ability to choose its own political form. *See LaGrande/ Astoria v. PERB,* 281 Or 137, 576 P2d 1204, *on rehearing* 284 Or 173, 586 P2d 765 (1978).

Reversed and remanded with instructions to enter judgment for defendants.[4]

---

[4] The parties requested that we expedite this appeal, because of the proximity of the election. We have done so. The trial court granted the city's motion for summary judgment. The parties agree that there are no questions of fact. No remand for further proceedings, other than the entry of judgment, is necessary. *See Cochran v. Connell,* 53 Or App 933, 632 P2d 1385, *rev den* 292 Or 109 (1981).