Argued and submitted May 13, decision of the Court of Appeals affirmed and judgment of trial court reversed May 17, 1988

## CITY OF EUGENE,
*Petitioner on Review,*

*v.*

## ROBERTS et al,
*Respondents on Review.*

## (TC 16-88-02472; CA A48266; SC S35155)

756 P2d 630

Timothy J. Sercombe, Eugene, argued the cause and filed the petition on behalf of Petitioner on Review. With him on the petition was Harrang, Long, Watkinson & Arnold, P.C., Eugene.

William F. Gary, Deputy Attorney General, Salem, argued the cause on behalf of the respondents on review. Virginia L. Linder, Solicitor General, Salem, filed the response on behalf of the respondents on review. With her on the response were Dave Frohnmayer, Attorney General, William F. Gary, Deputy Attorney General, James E. Mountain, Jr., Special Counsel, and Janet A. Metcalf, Assistant Attorney General, Salem.

Before Lent, Presiding Justice, and Linde, Campbell, Carson, Jones and Gillette, Justices.

GILLETTE, J.

Linde, J., dissented and filed an opinion.

## GILLETTE, J.

This is a proceeding pursuant to ORS 246.910 in which the City of Eugene (City) seeks to compel Lane County election officials to place on the state primary election ballot an "advisory question" that the City Council wishes to submit to city voters. The defendant Secretary of State had directed the defendants Faw and Spriggs, who are the pertinent Lane County officials, not to place the advisory question on the ballot. The Circuit Court ordered defendants to include the measure on the ballot. Defendants appealed. The Court of Appeals reversed and remanded with instructions to enter judgment for defendants. *City of Eugene v. Roberts,* 91 Or App 1, 756 P2d 643 (1988). Because of the importance of the question, we granted review and heard argument on an expedited basis. We now affirm the Court of Appeals.

We take our statement of the case from a stipulation filed by the parties. The City Council submitted two items regarding the creation of a nuclear-free zone in Eugene to the Lane County Clerk to be placed on the primary election ballot. Each of the items contained a title, question, and explanation on the ballot title. The question in the first item asked city voters "Shall Eugene be a nuclear-free zone of a type which prohibits certain nuclear-related activities and provides for fines?" This item has been placed upon the primary election ballot. It is not implicated in the present case.

The ballot question for the second item asked city voters, "Which nuclear-free zone ordinance should the Eugene City Council adopt?" Thereafter, the ballot explanation described two proposed ordinances. The voters were asked to choose one of the two ordinances. Rejection of either or both was not an option. The Secretary of State advised the Lane County Clerk that this second item should not appear on the primary election ballot. This second item is the focus of this appeal.

After the Secretary of State told the Lane County Clerk that the proposed question should not appear on the primary election ballot, the City challenged her action in a mandamus proceeding filed with this court, in a petition for judicial review filed with the Court of Appeals and in the present ORS 246.910 proceeding in the Lane County Circuit

Court. This court denied the City's petition for writ of mandamus. The Court of Appeals dismissed the City's petition for judicial review. The Lane County Circuit Court entered summary judgment for the City and ordered the county election officials to place the disputed item on the May 17, 1988, primary election ballot. On appeal, the Court of Appeals reversed. The present review proceeding followed.

Plaintiff's complaint and the relief sought in this case are grounded on defendants' "failure to act * * * under any election law * * *" to place the City's advisory question on the state primary election ballot.[1] ORS 246.910. Therefore, the threshold question is whether any election law requires defendants to place the question on the ballot.

There is little material disagreement between the parties as to the meaning of the state election laws. The parties agree that local election officials place city measures and candidates on the ballot pursuant to ORS 254.095.[2] The

---

[1] Plaintiff did not ask for some other form of relief, such as the right to conduct its own election, printing its own ballots and using the county's polling places and personnel, as the dissent now argues it should be allowed to do. We express no opinion as to whether such a course of action would be statutorily and constitutionally permissible.

[2] ORS 254.095 provides:

"(1) The chief elections officer of any city shall prepare and furnish to the county clerk of each county in which the city is located, a certified statement of the city offices to be filled or for which candidates are to be nominated at the election and information concerning all candidates for the offices not later than:

"(a) The 61st day before the date of a primary or general election;

"(b) The 40th day before an election held on the date of a regular district election; or

"(c) The 34th day before any other election.

"(2) Except as provided in subsection (3) of this section, the chief elections officer of any city shall prepare and furnish to the county clerk of the county in which the city hall is located, a certified statement of the city measures to be voted on, including the ballot title for each measure, not later than:

"(a) The 61st day before the date of a primary or general election:

"(b) The 40th day before an election held on the date of a regular district election; or

"(c) The 34th day before any other election.

"(3) If a measure to be submitted to the electors of a city at a primary or general election was submitted on the election date in ORS 221.230(1) immediately preceding the date of the primary or general election, the chief elections officer of the city shall prepare and furnish the certified statement required for that measure in subsection (2) of this section on the 40th day before the primary or general election.

"(4) The chief elections officer of the city shall keep a copy of each statement filed under this section."

respondents argue, and the City acknowledges and constructs its argument around, the proposition that the advisory question involved here is not a "measure" within the meaning of ORS 254.095. That proposition requires some examination.

ORS 254.005(7) defines "measure" as something "submitted to the people for their *approval or rejection* at an election." (Emphasis supplied.) Whether the item here is or is not a "measure" is important because the language of ORS 254.145(6), which defines the way a ballot must be printed, provides, in part:

> "The ballot shall be printed to give the elector a clear opportunity to designate the elector's choice for candidates and *approval or rejection of measures submitted.* * * *"
> (Emphasis supplied.)

As already indicated, the item here does not permit "approval or rejection." It permits "approval or approval."

The Court of Appeals concluded, in spite of arguments to the contrary from both sides, that the item was a "measure," albeit a defective one:

> "* * * Defendants also say that the city's proposed question is not a 'measure.' We understand defendants to mean, however, that the question does not meet the statutory qualifications for a measure. We think that the correct characterization of defendants' argument is that the second question *is* a measure, as statutorily-defined, but that it is a defective one, in that it does not comply with the requirement of ORS 254.145(6) that voters be given the clear opportunity to approve or reject it. We agree with defendants that the question does not satisfy that requirement. The format of the question does not enable the voters to signify approval or rejection of both options. Therefore, they cannot approve *or* reject the measure in its entirety. Moreover, the question does not permit the voters to express actual approval or disapproval of *either* option, as distinct from selecting which of the two they prefer."

*City of Eugene v. Roberts, supra,* 91 Or App at 8. (Emphasis in original.) Having redefined defendants' argument, the Court of Appeals then accepted the revised argument that the proposed question *was* a measure, but a defective one. *Id.* at 8-9. Not surprisingly, both parties disagree.

■    We agree with the parties. The "defect" identified by

the Court of Appeals — the inability of voters to approve or reject the proposed question — makes it no "measure" at all. But the Court of Appeals nonetheless reached the correct conclusion when it said,

> "* * * The basis for our decision is that the city's question * * * does not fulfill conditions imposed by statute for a measure to be placed on the ballot. We agree with defendants that placing the question on the ballot would violate state law."

*Id.* at 8-9. The proposed question was not a "measure."

■     We agree with the Court of Appeals and defendants that whether an item qualifies for the ballot is a question of statute. We also agree that the pertinent statutes are ORS 254.005(7) and 254.145(6). We have held that the City's proposed question is not a "measure" under the statutes. Unless there is some other pertinent statute that somehow enlarges the class of items eligible to be placed on the ballot, the Court of Appeals' decision is correct.

We can find no such other statutory authority. The definition of "ballot" in ORS 254.005(1) supports our position:

> " 'Ballot' means any material on which votes may be cast for candidates *or measures.*" (Emphasis supplied.)

We hold that the City's proposed question was not a measure and was not entitled by statute to be placed on the May 17, 1988, primary ballot.

■     The City also argues that, even if its proposed question were not a "measure" entitled to be placed on the ballot, the Secretary of State had no right to order the local election officers not to place the proposed question on the ballot. The Court of Appeals found this question to be "the most difficult." Without rating the question, we agree with the Court of Appeals' answer.

The defendants relied on a collective reading of ORS 246.110[3] and 246.120[4] as the source of authority for the

---

[3] ORS 246.110 states:

"The Secretary of State is the chief election officer of this state, and it is the secretary's responsibility to obtain and maintain uniformity in the application,

Secretary of State's directive. They then argued that ORS 246.200(1)[5] and 246.210(1)[6] establish the county defendants' authority to follow the Secretary's directive. To the City's response that these statutes only authorized the Secretary to issue directions on *how,* not *whether,* to hold an election, the Court of Appeals responded that it read the Secretary's authority under ORS 246.110 "more broadly." It explained,

" 'As the officer responsible to "obtain and maintain uniformity in the application, operation and interpretation of the election laws," ORS 246.110, the Secretary of State had a duty to investigate the complaint that plaintiffs' certificates of nomination had been filed without the statutory requirements for nomination having been satisfied. Once the Secretary of State determined that plaintiffs' certificates of nomination were not valid, she had a duty to direct that plaintiffs' names be removed from the ballot.' "

*City of Eugene v. Roberts, supra,* 91 Or App at 5. (Citing *Goldstein v. Radokovich,* 68 Or App 843, 847, 683 P2d 149, *rev den* (1984)). We agree.

The City next argued that the Secretary, rather than

---

operation and interpretation of the election laws."

[4] ORS 246.120 states:

"In carrying out the responsibility under ORS 246.110, the Secretary of State shall prepare and distribute to each county clerk detailed and comprehensive written directives, and shall assist, advise and instruct each county clerk, on registration of electors and election procedures which are under the direction and control of the county clerk. The directives and instructions shall include relevant sample forms of ballots, documents, records and other materials and supplies required by the election laws. A county clerk affected thereby shall comply with the directives or instructions."

[5] ORS 246.200(1) states:

"Except as specifically provided otherwise in the statute laws of this state, the county clerk shall be the only election officer to conduct any election in this state. For the purpose of this section, the conduct of an election includes, but is not limited to, establishing precincts and polling places, preparing ballots and sample ballots, and receiving and processing votes."

[6] ORS 246.210(1) states:

"Subject to the directives and instructions prepared and distributed or given by the Secretary of State under ORS 246.120 or 246.140, a county clerk may exercise general supervision of administration of election laws by each local election official in the county for the purpose of achieving and maintaining a maximum degree of correctness, impartiality, efficiency and uniformity in the administration by local election officials. In this regard the county clerk may assist local election officials in answering questions concerning the proper administration of election laws."

issue the directive, should have brought a proceeding in circuit court under ORS 246.820(1), which authorizes the Secretary to compel compliance

"[w]henever it appears * * * that a county clerk or a local election official has failed to comply with an interpretation of any election law * * * [or] with a rule, directive or instruction made by the Secretary * * *."

The Court of Appeals responded:

"We do not think that the statute aids the city. The secretary had no occasion to proceed against a clerk or election official here, because the county defendants complied with her directive. Indeed, ORS 246.820(1) is far more injurious than beneficial to the city's argument: it provides that the secretary is entitled to judicial *enforcement* of her instructions to county election officials, not that she must seek judicial *sanction* of the directives."

*Id.* at 5. (Emphasis in original.) Again, we agree.

Finally, the City argued that, whatever the Secretary's authority might be, the legislature had not granted authority to local election officials to "cancel an election called by a city council." The Court of Appeals responded:

"We disagree. ORS 246.200(1) is a broad grant of authority, and it states that the powers it enumerates are not a limitation on the general authority of clerks in connection with the conduct of elections. Moreover, it must be read in conjunction with ORS 246.210(1), which, subject to the secretary's directives and instructions, gives county clerks the authority to supervise the administration of election laws by local election officials in the county. Moreover, it would make no sense for the secretary to have the broad powers she enjoys to interpret, enforce and instruct county clerks concerning the election laws if they, in turn, have as little authority as the city suggests to carry out her instructions."

*Id.* at 6. To this we would only add, *see, OEA v. Phillips,* 302 Or 87, 727 P2d 602 (1986).

The City relies exclusively upon ORS 246.200(1) as the source of defendants' alleged duty to include the advisory question on the ballot. That statute provides:

"(1)  Except as specifically provided otherwise in the statute laws of this state, the county clerk shall be the only election officer to conduct any election in this state. For the

purpose of this section, the conduct of an election includes, but is not limited to, establishing precincts and polling places, preparing ballots and sample ballots, and receiving and processing votes."

This statute embodies two related legislative choices: it empowers county clerks to conduct elections, and it bars any other official from conducting elections unless specifically authorized by state statute. The City's argument is a non-sequitur: the County Clerk is empowered to conduct elections; therefore, he is required to place the City's advisory question on the ballot. The relevant question here is not whether defendants have a duty to conduct elections, but rather whether defendants have a duty to engraft the City's proposed question which is not a "measure" on the election they are about to conduct. State law imposes no such duty.

Because state law does not require or authorize defendants to conduct a vote on the City's advisory question, the only other potential source of the duty the City seeks to enforce is the City's own charter provisions and ordinances. The City relies upon Ordinance number 19534 (February 8, 1988) as authority for the submission of advisory questions to the voters. It contends that, by refusing to place the advisory question on the state primary election ballot, the county clerk and Secretary of State are violating the City's constitutional home rule powers. Or Const Art XI, § 2.[7]

The City is wrong. In its present posture, this is not a

---

[7] Article XI, section 2, of the Oregon Constitution provides:

"* * * The Legislative Assembly shall not enact, amend or repeal any charter or act of incorporation for any municipality, city or town. The legal voters of every city and town are hereby granted power to enact and amend their municipal charter, subject to the Constitution and criminal laws of the State of Oregon * * *."

The City also cites and apparently relies upon Article IV, section 1(5), of the Oregon Constitution, as a source of its authority to compel state and county officials to include an advisory question on the ballot. That provision is inapposite. Article IV, section 1(5), reserves initiative and referendum power over local legislation to the qualified voters of each municipality and district. The provision further authorizes cities to provide the manner of exercising those powers. This case does not involve voter initiated or referred local legislation. Therefore, the provision has no bearing on this case.

Generally, the Constitution expressly entrusts responsibility for prescribing the manner of regulating and conducting elections to the Legislative Assembly. Oregon Constitution, Article II, section 8.

home rule case. The home rule provisions of the Oregon Constitution empower the voters of every city to enact and amend their municipal charter. While this power entitles city voters to prescribe (subject to certain limitations) their own form of municipal government, it does not by its terms empower city governments to conscript the services of county and state officials in the conduct of city business. And, as we have demonstrated elsewhere, the statutes do not conscript such officers as a blanket matter, either. A home rule issue would be presented if the City of Eugene sought to conduct an advisory vote and the state sought to preclude it from doing so. That is not this case. The City here seeks to compel action by state and county officials. Home rule does not extend so far. The source of any duty to comply with the City's request must be in state law.

In *Wilson v. City of Medford,* 107 Or 624, 215 P 184 (1923), this court rejected a similar attempt by a city to compel county officials to act. There, an ordinance of the City of Medford purported to require the county recorder to record certain items on the county lien docket. This court said:

> "* * * Stated in broad terms and without attempting to attain technical exactness, the city can as part of its prescribed procedure require the recording in the office of the county recorder of any paper which it would, by force of state law, be the duty of that officer to record if presented by any individual; but cities cannot, in the exercise of the initiative and under the guise of municipal legislation expand the duties of state or county officers beyond the limits fixed by state laws * * *."

*Id.* at 643. (Citations omitted.) We find this analysis to be equally applicable here. *See also La Grande v. Municipal Court,* 120 Or 109, 251 P 308 (1926); *Cole v. Seaside,* 80 Or 73, 156 P 569 (1916); *State v. Port of Astoria,* 79 Or 1, 154 P 399 (1916); *West Linn v. Tufts,* 75 Or 304, 146 P 986 (1915).

The City argues that defendants are required to conduct the City's advisory vote because ORS 246.200 *precludes* the City from conducting its own advisory vote. By this argument, we understand that the City concedes that the state may regulate the time, place and manner of city elections in order to then be able to argue that home rule requires state and county officials to conduct votes of the city's choosing, at

the city's direction. We do not find that the latter proposition follows from the former.

A legitimate home rule question might be presented in this case if the City had sought to conduct its own election on the proposed question and defendants, under the authority of ORS 246.200, sought to prevent the city from doing so. Home rule is not implicated in any event where, as here, county and state officials decline to do an act that is not required or contemplated by state law.

The decision of the Court of Appeals is affirmed. The judgment of the trial court is reversed.

## LINDE, J., dissenting

The City of Eugene wants to ask its citizens to indicate their preference between two alternative policies, one of which the city council may, but need not, decide to enact as a city ordinance. The city has made provisions for asking such advice under its home rule charter, as it is entitled to do. Or Const, Art XI, § 2.[1]

The Secretary of State has instructed Lane County election officials to exclude the city's advisory question from the election to be held on May 17, 1988. The Secretary's reason is not that the question is advisory only, for the Secretary is including in the election another advisory question of the Eugene City Council asking whether its voters favor or oppose

---

[1] Article XI, section 2 of the Oregon Constitution provides:

"The Legislative Assembly shall not enact, amend or repeal any charter or act of incorporation for any municipality, city or town. The legal voters of every city and town are hereby granted power to enact and amend their municipal charter * * *."

By Ordinance No. 19534, enacted February 8, 1988, the Eugene City Council added the following section to the Eugene Code:

*"Advisory Elections*

"(1) Whenever the city council deems it necessary, it may send a question or proposition to the electors for their advice. The calling of such an election shall occur during the time set by state and local law for the submission of legislation to the electorate for adoption or rejection.

"(2) The advisory ballot title shall be in a form approved by the city council. The advisory ballot measure may seek selection between substantive options or choices, or it may seek an affirmative or negative response to the proposition or question."

Eugene Code, § 2.999.

adoption of a related ordinance. The Secretary's objection is that the question here at issue cannot be answered "yes" or "no," as required for the "official ballot" under ORS 254.145(6). The city, however, responds that it is prepared to print additional paper ballots at its own expense if the respondent election officials will permit voters to use them, but respondents will not do so.

The dispute centers on the law that places all elections under the county clerks and the Secretary of State. ORS 246.200 provides:

> "Except as specifically provided otherwise in the statute laws of this state, the county clerk shall be the only election officer to conduct any election in this state. For the purpose of this section, the conduct of an election includes, but is not limited to, establishing precincts and polling places, preparing ballots and sample ballots, and receiving and processing votes."

The statute includes city and special district elections. Although the election officer is a county official, that officer is responsible for conducting elections for cities and districts as well as for the state. ORS 246.200 specifies that the county clerk shall be the *only* election officer.

The City of Eugene has designated the desired advisory vote on the preference between two potential ordinances as a city election. If the statute lets the Secretary of State second-guess the city on that point, the city must have some other way to conduct its election; otherwise the statute would be unconstitutional. But ORS 246.200 specifies that the county clerk shall be the *only* election officer to conduct *any* election in this state. Beyond question the 1979 election statutes meant to monopolize the conduct of elections under the county election officers and the Secretary of State. Or Laws 1979, ch 190 and 317. Under ORS 246.200, the city cannot legally have its own election officer and conduct a city election (assuming that this were practical), if we respect the words "only election officer" and "any election in this state" and the legislative policy they embody. And, once all election personnel and machinery have been centralized under the county clerk, a separate city vote without using the county's personnel and facilities may be quite impractical in a city that retains no such facilities of its own, particularly a city the size of Eugene.

The respondent election officials and the majority of this court do not deny the difficulties resulting from their reading of ORS 246.200. They choose to avoid dealing with the constitutional problem by asserting that it is not before us until a city tries to conduct its own election on an issue like the present preference vote and someone tries to prevent it.

But for the opening left by the majority for letting the city add its own "unofficial" ballots to the "official" state-prepared ballot, today's decision would conclusively force separate city elections on questions that the Secretary of State deems unfit for the state-prepared ballot. That contradicts the legislature's choice expressed in the strong language of ORS 246.200. For, whatever one may think of advisory plebiscites, there can be little doubt that the constitution allows cities to conduct them, and not only by empowering each city to determine its political form and procedures under Article XI, section 2. *See LaGrande/Astoria v. PERB,* 281 Or 137, 576 P2d 1204, *aff'd on rehearing,* 284 Or 173, 586 P2d 765 (1978). We are dealing with a city's official effort to poll its citizens on a question of official city policy, not renting a place on the ballot for a preference poll between old and new Coca Cola. To forbid the city entirely to conduct a vote to learn the citizens' wishes also would appear to be a law "restraining any of the inhabitants of the State * * * from instructing their Representatives," contrary to Article I, section 26 of the Constitution.

All of this concern is unnecessary. The statute can be squared with the constitution. The city does not insist that the state prepare a ballot containing a question that cannot be answered "yes" or "no," if that is the Secretary's only legal objection. The city should be allowed to go forward with the separate ballot it is prepared to have printed for itself. The city needs the election officials in order to staff precincts and carry out the election process, whether or not the state prints the "official ballot" under ORS 254.135 and 254.145. This would conform to the legislature's assignment of city elections exclusively to the county clerks in ORS 246.200. To let the Secretary of State force some city elections out of the county election system does not conform to that legislative policy.

Perhaps the city was not entitled to all the relief that it demanded and that the circuit court ordered, but it was entitled to some modification of the order. The respondents

should be ordered to make their services available to the city to conduct its advisory election between the two policies that it contemplates enacting into a city ordinance, using city ballots. Because the court affirms the contrary decision of the Court of Appeals, I dissent.