ARMSTRONG, P. J.
*297 Plaintiffs appeal a judgment dismissing their complaint against defendants for declaratory and injunctive relief and breach of fiduciary duty, which arose out of a dispute over control of the Libertarian Party of Oregon (LPO). The trial court granted defendants' motion for summary judgment on the ground, among others, that the claims are not justiciable under the Uniform Declaratory Judgments Act, ORS chapter 28 (UDJA), because other, nonjudicial, remedies are available. As explained below, we conclude for reasons different from the trial court that the claims are not justiciable under the UDJA and therefore affirm on appeal. We reject without discussion defendants' contention on cross-appeal that the trial court erred in rejecting their request for an award of attorney fees under ORS 20.105 and therefore affirm on cross-appeal.
The facts as alleged in the second amended complaint and drawn from the record are largely undisputed. At the March 2010 annual LPO convention, defendant Wagner was elected LPO vice-chairperson. On March, 12, 2011, the LPO met for its 2011 annual convention, with 20 party members in attendance. The convention fell short of a quorum as defined by the then-existing, 2009 LPO bylaws. On Wagner's motion, the convention was adjourned and continued to May 21, 2011. Shortly after the March 2011 meeting, then LPO state chairperson Weston resigned. Under the 2009 bylaws, upon the resignation of a state chairperson, the vice-chairperson "shall serve as State Chairperson until the close of the next annual convention." Thus, Wagner, as vice-chairperson, assumed the office of state chairperson. Wagner then called a meeting of the "State Committee" (a committee established by the LPO constitution) for March 31, 2011. A majority of those attending the March 31, 2011, meeting adopted a new constitution and bylaws, with new quorum and membership requirements. At the same meeting, the State Committee appointed a board of directors, which subsequently appointed defendants as officers, with Wagner as state chairperson. At a meeting of April 19, 2011, the newly created board of directors met and changed the rescheduled May 21, 2011, annual convention into a social event at a different location. The newly adopted bylaws were *298 subsequently ratified by the membership by ballot and filed with the Secretary of State.
Plaintiffs are registered Libertarian electors. Only one plaintiff, Terry, was present at the March 31, 2011, meeting called by Wagner, and he objected to the proceedings. Plaintiffs instead attended the rescheduled May 21, 2011, annual convention, which defendants did not attend and which, like the March 12, 2011, convention, failed to achieve *432 a quorum. The rescheduled annual convention was adjourned sine die .
Under the 2009 bylaws, officers' terms begin immediately upon the close of an annual convention. But, because of the lack of a quorum, no officers were elected at the May 21, 2011, annual convention. The 2009 bylaws provide that the State Committee can meet for the purpose of filling vacant officer positions. Immediately after the convention, plaintiffs, as the putative remaining State Committee members, held a State Committee meeting, where the members present elected plaintiffs as officers, with Reeves as state chairperson. In late May 2011, the Secretary of State rejected plaintiffs' attempt to register their elected officers, because the Secretary had previously recognized Wagner as LPO chairperson.
Since May 2011, the Wagner group and the Reeves group have vied for leadership and control of the LPO. The question underlying their dispute is whether the 2009 bylaws or the bylaws adopted at the March 31, 2011, meeting govern the activities of the LPO.
The 2009 bylaws require advance notice to LPO members of proposed amendments to either the LPO constitution or bylaws:
"Advance Notification. Proposed amendments to this Constitution and Bylaws shall be entered on the agenda of the next annual convention to be held in an odd numbered year unless the State Committee authorizes a special convention to be held sooner for that purpose. The Secretary shall make texts of such approved amendments available to each LPO member via written or electronic means, as each member prefers, no fewer than forty five days prior to the opening of said convention."
*299 The 2009 bylaws further provide:
"These Bylaws may be amended by a two-thirds majority vote of all votes cast by registered delegates present at an LPO convention."
As alleged in the second amended complaint, the bylaws adopted on March 31, 2011, did not comply with those requirements. On the face of the record, there are no factual disputes on that question.[1] The question presented on appeal is whether a court has authority under the UDJA to make that determination.
The Libertarian Party is a "minor political party." See ORS 248.006 (defining "major political party"); ORS 248.008 (defining a "minor political party"). Under ORS 248.009(1), a minor political party is required to file with the Secretary of State "a copy of its organizational documents establishing its process for nominating candidates for public office." The minor political party also is required to file copies of "any changes to its organizational documents relating to nomination of candidates for public office not later than 30 days after the date any changes were made." Additionally, not later than 10 days after any selection is made, a minor political party is required to file with the Secretary of State's "filing officer" "a list of any officers selected by the party." ORS 248.009(2).
As noted, after the March 31, 2011, meeting, the Wagner group filed the newly adopted bylaws with the Secretary of State. The Wagner group also filed a list of officers showing Wagner as LPO chairperson. The Reeves group then attempted to file its own list of officers, which the Secretary rejected.
*300 A minor political party candidate for office seeking to be placed on the ballot based on a party nomination must be named in a certificate of nomination signed by an officer of the party and filed with the secretary. ORS 249.720(3) ; ORS 249.722. In anticipation of an upcoming election, the Reeves group sought to resolve the conflict concerning the leadership of the LPO by asking the *433 Secretary to determine who should be recognized as the leaders of the LPO for purposes of nominating candidates for office. The Secretary's Elections Director responded by adhering to the earlier decision to list Wagner as LPO chairperson for the purpose of accepting nominations of LPO candidates. In a letter of September 29, 2011, the Elections Director explained:
"We understand that the Judicial Committee of the National Libertarian Party has left it up to this office to decide which of your competing groups will be recognized by the state as the leadership of the Libertarian Party of Oregon.
"While we have attempted to stay out of your internal party processes, it is clear that we will have to make a decision so that the voters affiliated with the Libertarian Party of Oregon will be able to have a candidate for the Special Election in the 1st Congressional District.
"We currently recognize, and will continue to recognize Wes Wagner as Chair of the Libertarian Party of Oregon . We will accept the Libertarian nominee for the 1st Congressional District Special Election from Mr. Wagner."[2]
(Emphasis added.)[3]
*301 Plaintiffs did not pursue an appeal or judicial review of the Elections Director's determination.[4] Instead, on January 16, 2012, plaintiffs brought this declaratory judgment action in the Clackamas County Circuit Court against the LPO, Wagner and the other putative Wagner group officers, seeking a judicial resolution to the conflict.[5] In their second amended complaint, plaintiffs sought a declaration that the bylaws adopted by the Wagner group at the March 31, 2011, meeting are null and void and that the 2009 bylaws remain in effect, and that Reeves and the officers appointed by the State Committee on May 21, 2011, are the current officers of the LPO. Plaintiffs also brought a claim under ORS 65.084, seeking to enjoin defendants from functioning as officers of the LPO, an accounting of LPO funds expended since March 2011, and a return of LPO property. For their third claim, plaintiffs alleged that defendants had breached their duty to the corporation. Their prayer sought to leave the record open to allow the LPO to pursue supplementary relief under ORS 28.080.[6] See *434 Dry Canyon Farms v. U.S. National Bank of Oregon , 96 Or. App. 190, 194, 772 P.2d 1343 (1989) (a party is not precluded from seeking supplemental relief in the form of damages by its failure to claim such damages in the original declaratory proceeding). *302 Defendants filed a motion to dismiss the complaint, contending that plaintiffs' exclusive remedy was to seek judicial review of the Elections Director's September 29, 2011, determination. The trial court denied the motion to dismiss.
Plaintiffs then filed a motion for partial summary judgment, seeking a declaration that the 2009 bylaws are the governing bylaws for the LPO. They conceded at the hearing before the trial court that their other claims would follow from that determination, with the exception of a possible subsequent request for supplemental relief.
Defendants, in turn, filed a motion for summary judgment contending, among other arguments, that the trial court lacked authority to resolve the LPO's internal disputes. The trial court granted defendants' motion, reasoning that the matter is not justiciable or that, in the exercise of discretion, the court would not interfere in the internal disputes of a political organization.[7] See ORS 28.060 (describing circumstances under which court may exercise discretion to refuse to enter a declaratory judgment); Brooks v. Dierker , 275 Or. 619, 624, 552 P.2d 533 (1976) (court should decline to exercise its jurisdiction under ORS 28.010 if some *303 more appropriate remedy exists). In view of its ruling on defendants' motion, the trial court denied plaintiffs' motion for partial summary judgment.
On appeal, plaintiffs contend that the trial court erred in dismissing their claims as nonjusticiable and in denying their motion for partial summary judgment. Defendants seek an affirmance of the trial court's dismissal of the complaint, asserting, among other grounds, that the Elections Director's determination that the Wagner group constitutes the leadership of the LPO was an "order" subject to review under the state Administrative Procedures Act (APA), and that judicial review provided the exclusive method to challenge the order. For the reasons explained here, we agree with defendants.
Under the UDJA, ORS 28.010 to 28.160, "[c]ourts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations, whether or not further relief is or could be claimed." Under ORS 28.020, an "interested" person may obtain a declaration of a "deed, will, written contract or other writing constituting a contract," and a person whose "rights, status or other legal relations are affected" may obtain a declaration of "a constitution, statute, municipal charter, ordinance, contract or franchise." As we recently held in Courter v. City of Portland , 286 Or. App. 39, 53, 398 P.3d 936 (2017), the court's authority under the UDJA is broad. ORS 28.120 provides:
"This chapter is declared to be remedial. The purpose of this chapter is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and *435 other legal relations, and is to be liberally construed and administered."
Initially, we reject defendants' contention that plaintiffs lacked standing to bring their claims. Plaintiffs, as registered Libertarians in Oregon, have an interest in the operational documents of the LPO, which puts forth Libertarian candidates for office. In addition, plaintiffs' status as registered Libertarians is affected by the governing documents of the LPO. We therefore conclude that plaintiffs would have standing to bring a declaratory judgment claim. See *304 Morgan v. Sisters School Dist. No. 6 , 353 Or. 189, 194, 301 P.3d 419 (2013) (to seek relief under the UDJA, a plaintiff must establish that his or her rights, status, or other legal relations are affected by the relevant instrument).
We conclude, further, that bylaws are documents subject to a declaration under the UDJA. See WSB Investments, LLC v. Pronghorn Devel. Co., LLC , 269 Or. App. 342, 356, 344 P.3d 548 (2015) (noting "well-established legal principle" that bylaws of a corporation are a contract between members of the corporation and between the corporation and its members (citing Dentel v. Fidelity Savings & Loan , 273 Or. 31, 33, 539 P.2d 649 (1975) ) ). Plaintiffs' primary contention is that, based on the face of the LPO's organizational documents, the process by which defendants purported to adopt new bylaws was ineffective.[8] The primary issue on appeal is whether a court has authority to address that question.
*305 Although courts have broad authority under the UDJA to provide declaratory relief, a court lacks subject matter jurisdiction under the UDJA if some other remedy is exclusive. Alto v. State Fire Marshal , 319 Or. 382, 395, 876 P.2d 774 (1994). An administrative review process, when available, is the exclusive means of reviewing an agency's action. Wallace v. State ex rel. PERB , 245 Or. App. 16, 26, 263 P.3d 1020 (2011), rev. den. , 352 Or. 342, 288 P.3d 276 (2012). When a dispute involves an agency's action or refusal to act, the APA provides the sole and exclusive means of obtaining judicial review, and an action for declaratory relief is not available. Salibello v. Board of Optometry , 276 Or. App. 363, 368, 367 P.3d 932 (2016) ; see ORS 183.484 (setting forth procedures for judicial review of orders in other than contested cases); Bay River v. Envir. Quality Comm. , 26 Or. App. 717, 720, 554 P.2d 620, rev. den. , 276 Or. 555 (1976) ("The [APA] establishes a comprehensive pattern for the judicial review of administrative decisions. The various APA statutes governing judicial review provide the sole and *436 exclusive methods of obtaining judicial review."). Additionally, a court should decline to exercise its jurisdiction under ORS 28.010 if some more appropriate remedy exists. Brooks , 275 Or. at 624, 552 P.2d 533.
We agree with defendants that plaintiffs' exclusive remedy was to seek judicial review of the Election Director's letter under the APA. The Secretary of State is an "agency" subject to the APA. ORS 183.310(1) ; Ellis v. Roberts , 302 Or. 6, 18, 725 P.2d 886 (1986) (decisions of the Secretary of State under the election laws are orders in other than a contested case); Strombeck v. Secretary of State , 128 Or. App. 142, 145, 874 P.2d 1366, rev. den. , 319 Or. 572, 879 P.2d 1286 (1994) ("The Secretary of State is a state officer, and the statutes governing the office recognize the applicability of the APA."). Additionally, plaintiffs do not dispute that the Elections Director's letter is a "final order" under the APA. See ORS 183.310(6)(b).[9] Under ORS 183.484, a party has 60 days from the date an order *306 in other than a contested case is served within which to file a petition for judicial review of the order. ORS 183.484(2). Plaintiffs did not seek judicial review of the Election Director's order, and the time period to do that has expired.
Plaintiffs contend that their claims are not subject to the APA because the questions on which they seek a declaration are beyond the scope of the Secretary's authority. They note that ORS 248.011 states that, "[e]xcept as required by law, the Secretary of State * * * shall not enforce * * * any * * * rule adopted by a political party," and they reason that the statute prohibits the Secretary from determining which bylaws are in effect. Contrary to plaintiffs' contention, however, for the reasons explained below, we conclude that ORS 248.011 does not prevent the Secretary from construing political party bylaws or organizational documents in the course of determining who should be listed as the officers of a political party for the purpose of nominating candidates.
As the state's chief elections officer, the Secretary of State is responsible for "obtain[ing] and maintain[ing] uniformity in the application, operation and interpretation of the election laws." ORS 246.110. A candidate may be nominated by a minor political party through a certificate of nomination signed by a party officer. ORS 249.720(3). Among the Secretary's responsibilities are the duties to register certificates of nomination, ORS 249.810, and to receive a list of political party officers, ORS 248.009(2). As noted, ORS 248.009(1) requires a minor political party to file with the Secretary "a copy of its organizational documents establishing its process for nominating candidates for public office." The statute further provides that a minor political party "shall nominate candidates for public office only in accordance with the procedures set forth in its organizational documents." In receiving a list of officers from a political party so as to determine who may sign a candidate's certificate *307 of nomination, the Secretary is in a position to determine whether the person signing the certificate became an officer in accordance with the procedures set forth in the party's organizational documents. See Goldstein v. Radakovich , 68 Or. App. 843, 847, 683 P.2d 149, rev. den. , 297 Or. 824, 687 P.2d 797 (1984) (Secretary had duty to investigate complaint that candidate's certificate of nomination was in violation of statutory requirements). That determination, in turn, may depend on the construction of the organizational documents.
Plaintiffs assert that a determination by the Secretary of which organizational documents control would violate ORS 248.011, because it would constitute the "enforcement" of LPO rules. We disagree. ORS 248.011 imposes a prohibition against enforcement *437 of party rules "except as required by law." The Secretary's statutory obligation to receive lists of party officers and certificates of nomination signed by a party officer implicitly includes the authority to determine whether the persons listed are, in fact, officers, and whether the person signing is, in fact, an officer. Additionally, "enforcement" implies compelling a political party to act in accordance with its governing documents or rules. See Webster's Third New Int'l Dictionary 751 (unabridged ed. 2002) (defining "enforcement" as "the compelling of the fulfillment (as of a law or order)"). The Secretary's construction of organizational documents for the purpose of determining whom the Secretary should list as the party's officers does not compel the party to take any action; rather, it satisfies the Secretary's own obligation to receive a list of party officers.
Our understanding of ORS 248.011 is not inconsistent with the legislative history of the statute. The Secretary of State's representatives testified about Senate Bill 183 (1995), enacted as ORS 248.011. Scott Tigh, a manager with the Elections Division, explained that the bill was intended to express "that the Secretary of State or other elections official * * * will not interfere with the administration of the party bylaws and rules." Tape Recording, Senate Committee on Rules and Elections, S.B. 183, May 25, 1995, Tape 82, Side A (statement of Scott Tigh). Colleen Sealock, then Director of the Elections Division, testified:
*308 "The Secretary of State and county clerks have a very limited role in enforcing party rules. The only role it has is where the statutes expressly require that we become involved. This is on behalf of the political parties who believe that it would be inappropriate for a public agency to get involved in internal party affairs and we certainly are in agreement and support that."
Tape Recording, House Committee on Legislative Rules, S.B. 183, June 7, 1995, Tape 127, Side A (statement of Colleen Sealock). That legislative history suggests that the prohibition in ORS 248.011 was intended to prevent the Secretary from interfering in the internal administration of political parties. The Secretary's ability to construe and apply the party's bylaws so as to satisfy the Secretary's obligation to identify persons who are eligible to be listed as officers does not interfere in the party's internal affairs. We therefore reject plaintiffs' contention that ORS 248.011 prevents the Secretary from construing a minor party's organizational documents to fulfill the Secretary's duties under the election laws.
Plaintiffs contend further that their action is not subject to the APA because it does not challenge the Secretary's determination of who are LPO officers; in fact, plaintiffs point out, the Secretary is not named as a party, and plaintiffs agree with the Secretary's determination that this dispute must be left to the courts. It is true that, as drafted, the second amended complaint does not explicitly challenge the Secretary's determination. Rather, the complaint challenges conduct that purported to adopt new LPO bylaws, to select new officers, and to the listing of Wagner as chairperson by the Secretary.
But, in practical effect, the Secretary's determination is being challenged. In presenting conflicting lists of officers to the Secretary, the same parties involved in this declaratory judgment action placed before the Secretary their dispute concerning the leadership of the LPO. Despite initially objecting to resolving internal disputes of political parties, the Secretary in fact resolved the parties' dispute through a letter directed to the parties receiving the Wagner group's list and rejecting the Reeves group's list. It is undisputed *309 that the Secretary thereby issued a determination that was subject to judicial review as an "order." See ORS 183.310(6) (" 'Order' means any agency action expressed orally or in writing directed to a named person or named persons[.]"). The requested declaration seeks a determination that the Reeves group and its officers control the LPO for purposes of elections and would thereby overturn the Secretary's order. Because, as we have explained, the Secretary had authority to construe and apply the LPO's bylaws in resolving the parties' dispute as to whether Wagner was properly listed as *438 LPO chairperson, plaintiffs could have obtained the relief that they seek through a challenge to the Secretary's order. Therefore, plaintiffs' exclusive remedy was under the APA, and the trial court correctly dismissed the complaint.[10]
Affirmed on appeal and on cross-appeal.

Under the 2007 constitution of the LPO, the "State Committee" is responsible for "the control and management of all affairs, properties, and funds of the LPO, consistent with this Constitution and Bylaws." The 2007 constitution also creates a "Judicial Committee," which "shall be the final body of appeal in all matters requiring interpretation of the Constitution, Bylaws, rules or resolutions of the LPO, subject to the provision that a decision of the Judicial committee may be overruled by a three quarters vote at the next convention." Thus, under the 2009 bylaws, the Judicial Committee is the final arbiter of disputes concerning an interpretation of the bylaws. This opinion does not purport to interpret the 2009 bylaws.

In the meantime, the national Libertarian Party had recognized the Reeves group for purposes of seating delegates at the party's 2013 national convention.

In a subsequent affidavit of July 23, 2012, filed with a motion for an expedited trial in this case, the Elections Director averred:
"August 28, 2012, is the last day that minor political party candidates can submit their certificates of nomination for the November 6, 2012 general election. Resolution of any disputes about who are the legitimate nominees of the Libertarian Party of Oregon needs to be resolved on or prior to that day in order for the Secretary of State to be able to place resulting candidates on the ballot."
On April 2, 2013, the Elections Director further averred:
"The Secretary of State's Elections Division has not and will not enforce or adjudicate disputes about political party bylaws. We have told the parties that they have to go to court to adjudicate this matter if there is to be any change because we do not adjudicate this type of dispute."

We note that, under ORS 246.910(1), plaintiffs could have appealed the Secretary's orders:
"A person adversely affected by any act or failure to act by the Secretary of State * * * under any election law, or by any order, rule, directive or instruction made by the Secretary of State * * * may appeal therefrom to the circuit court for the county in which the act or failure to act occurred or in which the order, rule, directive, or instruction was made."
The remedy provided by ORS 246.910 is "cumulative and does not exclude any other remedy." ORS 246.910(5).

The 2007 LPO constitution provides:
"The Judicial committee shall be the final body of appeal in all matters requiring interpretation of the Constitution, Bylaws, rules, or resolutions of the LPO, subject to the provision that a decision of the Judicial committee may be overruled by a three quarters vote at the next convention."

This is not the first time that a dispute concerning the governance of the LPO has come before a circuit court. In 2006, Wagner filed a writ of mandamus in Washington County Circuit Court, seeking to compel LPO officers to comply with and perform duties imposed on them by the then existing LPO bylaws and state law. After a hearing, the court granted the defendants' motion to dismiss the writ, explaining that the court did not believe that it had authority to compel the Libertarian Party to comply with its own internal rules.

The court offered several reasons for its conclusion: First, under the terms of the 2007 Constitution and 2009 bylaws, the LPO's "Judicial Committee" is the final arbiter of disputes concerning an interpretation of bylaws.
The trial court also opined that the United States Supreme Court has held that the First Amendment circumscribes the extent to which courts can resolve intra-political-party disputes. See, e.g. , Cousins v. Wigoda , 419 U.S. 477, 95 S.Ct. 541, 42 L.Ed.2d 595 (1975) (in the absence of a compelling state interest, states lack authority over a party's delegate selection process and the national convention is the proper forum for determining intra-party disputes as to which delegates should be seated).
The trial court noted, further, that, under ORS 248.011, the Legislative Assembly has enjoined the Secretary of State from enforcing any rules of a political party, indicating a legislative intention that internal disputes of political parties should be resolved internally.
Finally, the court observed that the national Libertarian Party had and had applied a process for resolution of a portion of the intra-party disputes relating to which group may provide delegates to the national convention. In light of all of those considerations, the court concluded:
"This matter is either nonjusticiable or, if the court has the power to address the dispute, it also has discretion to stay its hand in light of the existence of other remedies that may lead to resolution of these sensitive matters without the need for the court to intrude upon the inner workings of a political party."

Defendants contend that the process that they chose to use to replace the 2007 constitution and 2009 bylaws was nonetheless permitted. Defendants note the statement in the 2009 bylaws that the bylaws "may be amended by a two-thirds majority vote of all votes cast at an LPO convention." (Emphasis added.) They contend that the use of the word "may" suggests that the bylaws do not provide the exclusive means of amending or replacing them, and that they may also be amended or replaced in other, undescribed, but statutorily supported ways.
The 2007 constitution requires the State Committee to manage the affairs of the LPO "consistent with this Constitution and Bylaws." Article XVI of the 2009 bylaws, entitled "Amendment Procedures," describes multiple processes to amend the bylaws. With respect to amendments proposed in advance of an annual convention, Article XVI, section (1), provides that the proposed amendments
"shall be entered on the agenda of the next annual convention to be held in an odd numbered year unless the State Committee authorizes a special convention to be held sooner for that purpose,"
and requires that the LPO secretary
"make the texts of such approved amendments available to each LPO member via written or electronic means, as each member prefers, no fewer than forty-five days prior to the opening of said convention."
Article XVI, section 2, allows the proposal of bylaw amendments at a convention. Any delegate to a convention "at an odd-numbered year, or to any special convention held to consider the amendments" may propose an amendment of the constitution or bylaws, if such amendment is presented in writing before that convention finishes and if requested to be considered by at least ten percent of the delegates present. Finally, Article XVI, section 3, is entitled "Two Thirds Majority Required" and states: "These Bylaws may be amended by a two-thirds majority vote of all votes cast by registered delegates present at an LPO convention."
There is no provision in either the 2007 constitution or the 2009 bylaws for the State Committee to amend or replace the bylaws.

ORS 183.310(6) provides:
"(a) 'Order' means any agency action expressed orally or in writing directed to a named person or named persons, other than employees, officers or members of an agency. 'Order' includes any agency determination or decision issued in connection with a contested case proceeding.
"* * * * *
"(b) 'Final order' means final agency action expressed in writing. 'Final order' does not include any tentative or preliminary agency declaration or statement that:
"(A) Precedes final agency action; or
"(B) Does not preclude further agency consideration of the subject matter of the statement or declaration."

In view of our conclusion, we do not address defendants' contention that the First Amendment to the United States Constitution renders plaintiffs' claims nonjusticiable.